[Wilson v. The State.]

# Wilson *v.* The State.

### Murder.

(Decided February 10, 1916.   71 South. 115.)

1. **Evidence; Experts; Hypothetical Questions.**—In cross examining expert witnesses, hypothetical questions need not be based on facts proven in that particular case, but may rest on an assumed state of facts for the purpose of getting an opinion on all possible theories of the case, and of testing the value and accuracy thereof.

2. **Same.**—In examining expert witnesses, the range of the examination is largely within the discretion of the trial court, and will not be revised in the absence of abuse.

3. **Same.**—Where the defense was that deceased was killed by falling against a railroad rail and not by a blow from a blunt instrument as charged, defendant should have been permitted to ask physicians as expert witnesses whether the blow which caused the death could have been inflicted by falling on the rail.

4. **Witnesses; Examination; Cross.**—In order to afford a defendant the full right of cross examination, great liberty should be allowed by the court on such examination.

5. **Homicide; Evidence; Review.**—Where one is convicted of murder, the reviewing court should act with great caution on the question as to whether proper evidence was excluded.

6. **Appeal and Error; Review; Question.**—Error cannot be predicated upon the asking of a question which the record fails to show was asked and objected to, and an exception reserved.

7. **Same; Matters Necessary.**—Where a reversal is required on other grounds, the court need not consider whether remarks of counsel were improper, since that question is not likely to arise on another trial.

(McClellan, Somerville and Thomas, JJ., dissent.)

APPEAL from Jefferson Criminal Court.

Heard before Hon. H. P. HEFLIN.

John Wilson was convicted of murder, and he appeals. Reversed and remanded.

B. M. ALLEN, and M. H. MURPHY, for appellant.   W. L. MARTIN, Attorney General, and HUGO L. BLACK, Solicitor, for the State.

GARDNER, J.—Appellant was indicted for the murder of one Hugh Guthrie. The indictment charged that the crime was

committed by the defendant's striking the deceased with some blunt instrument, a more particular description of which was unknown to the grand jury.

On the night of the fatal difficulty, in the town of Wylam, Ala., the defendant, the deceased and others were together playing pool. They were all on friendly terms and were drinking to a greater or less extent. They left the poolroom and walked along until they reached a point on the railroad track near forty-second street, where they stopped and sang a few songs. One of the songs was the Scotch ballad, as named in this record, "Wee doch and dorriss." The deceased, who was a Scotchman, resented the fact that the defendant, who insists he is of French descent, was unable to properly pronounce the words of the song, and called him a "—— blatcher," at the same time striking him a blow in the face. Thereupon the defendant struck the deceased and knocked him down. Deceased regained his feet and he and the defendant clinched, and both fell together on the railroad track between the rails, in an "angling" position, as described by the defendant; the two rolled off the track a few feet, and when a few moments later the defendant regained his feet, the deceased was found to be in a dying condition, and within a few minutes was dead. No sign of blood was found on any portion of the railroad track nor on the cross-ties protruding from the roadbed; but blood was found on the ground where deceased lay, a few feet away from the track. Without waiting to ascertain deceased's condition the defendant went to his home a few blocks away, and a few minutes later when informed of the serious condition of deceased he returned and assisted in removing the dying man to the hospital.

The above facts appear to be practically undisputed, as we gather from the record of the case and from briefs of counsel. No witness testified to the use of any weapon by the defendant, but those present at the time of the difficulty stated that he had no weapon and only struck deceased with his fist. A piece of two-inch piping was found by one of the officers, lying among some weeds in a patch about 40 feet from the scene of the difficulty, and the officer testified to certain indications tending to show that this piece of piping (which he thinks was used as a stake) had been freshly thrown in the patch of weeds. No blood was found on the piping, however. Defendant testified that he

[Wilson v. The State.]

struck deceased with his fist, knocking him down, and that when deceased regained his feet they clinched and he tripped deceased, again throwing him down on the railroad track. There was evidence tending to show that deceased fell face downward. Defendant insists that he had no weapon of any kind, and that when he went to his home he was unaware that the deceased had been seriously injured. It was the contention of the state that defendant struck deceased with some blunt instrument.

Examination of the deceased showed that the frontal bone was fractured, the nose broken, and a part of the upper jaw and several teeth broken loose. There seems to be an agreement among the physicians that the fracture of the skull was the cause of the death. The theory of the defendant is that this fracture was caused by the fall on the railroad track when deceased's head struck the iron rail or a cross-tie, or some other hard substance on the track. The defendant was found guilty of murder in the second degree, and his punishment fixed at imprisonment for 65 years.

Dr. Roundtree, a witness for the state, after testifying that it was the fracture of the skull which caused the death of deceased, and that the injury could not have been inflicted by the naked fist of a man but was probably caused by some blunt instrument, said that in his opinion a fall on the railroad track and the striking of one's head or face on the rails or on the end of a cross-tie would not produce such injuries. He further testified that he had heard of a man's falling on the ground or sidewalk and sustaining a fractured skull, but that it was a fall of some distance from the ground. Dr. Roundtree was then asked the following question by defendant: "I asked you whether or not a man standing in an upright position on the ground, if you have not known of his falling and getting a fractured skull by hitting it on the ground or any hard substance?"

The state objected to the question on the ground that it did not hypothesize the facts in the case. The court sustained the objection.

Dr. Davidson, a witness for the state, after testifying substantially as did Dr. Roundtree, was asked similar questions by the defense, to which objections by the state were sustained by the court. A somewhat kindred ruling was made, on the objection of the state, to a question asked Dr. Hamrick, a witness for the defendant.

In *Parrish v. State,* 139 Ala. 16, 43, 36 South. 1012, 1020, it was said: "The hypothetical question to an expert witness should not contain matter which there is no evidence tending to support. However, technical accuracy is not required as to this. It is for the jury to scrutinize the evidence and to determine what part of the question is true or supported by the evidence and what is not, and the adverse party may ask for instructions, that the jury do not accept the facts as true, but that they should determine whether such facts were in evidence, and that they might disregard the opinion of the expert if not based on facts in evidence. * * * Expert witnesses may be cross-examined and their opinion obtained, based on other states of facts, assumed by the party examining them to have been proven upon a hypothetical case; and they may be cross-examined on purely imaginary and abstract questions. Such questions are not only permissible in order to get the opinion of the expert witness upon all possible theories of the case, but they are allowable also to test the value and accuracy of the opinion of the witness himself."

See, also, *Southern Bitulithic Co. v. Perrine,* 190 Ala. 96, 67 South. 601, and Jones on Evidence (2d Ed.) § 389.

(1) As stated in *Parrish v. State, supra,* on cross-examination of expert witnesses, hypothetical questions need not be based on facts proven in that particular case, but may rest upon an assumed state of facts; and such witnesses may be cross-examined on abstract questions, not only to elicit the opinion of the expert upon all possible theories of the case, but also test the value and accuracy of his opinion.

(2, 3) The questions asked Drs. Roundtree and Davidson were entirely pertinent upon the theory of the defense and were highly important from defendant's standpoint. These physicians had given it as their opinion that the injuries received by the deceased could not have been caused by a fall on the rails or cross-ties, or other hard substance, but in their opinion were produced by a blow inflicted by some blunt instrument. The defendant insisted that the injuries resulted from the fall. Death resulted from the fracture of the skull; and the fracture of the skull, therefore, was the most material and important inquiry with which the defendant was concerned. That the questions were entirely proper is quite clear.

We are aware of the fact that in the examination of expert witnesses the questions to be asked, and the range of the examination, must be left largely to the discretion of the trial court, and particularly so, doubtless, in cross-examination of witnesses (*Sou. Bit. Co. v. Perrine, supra; Mitchell Co. v. Grant,* 143 Ala. 194, 38 South. 855) ; and that the court's decision on these questions will not be revised, unless it is made clearly to appear that error intervened and that it worked prejudice to the defendant. The questions asked involved the most vital parts of the defense, and the court consistently ruled these questions improper.

In *Tate v. State,* 86 Ala. 33, 5 South. 575, it was said: "The Constitution (article 1, § 7) secures to every one on trial for a public offense the right 'to be confronted by the witnesses against him.' This constitutional right would lose half its value, if the kindred right of cross-examination were denied. That right is probably and generally the most effective instrumentality for eliciting the witness' 'means of obtaining correct and certain knowledge of the facts to which he bears testimony.'—1 Greenl. Ev. § 446."

The importance of cross-examination was again recognized by this court in the more recent case of *Wray v. State,* 154 Ala. 36, 45 South. 697, 129 Am. St. Rep. 18, 16 Ann. Cas. 362, wherein it is said: "It necessarily results that, where the opportunity is given by the trial court in its well-reposed discretion in the premises, its action will not be condemned in exercise in the given case, unless it clearly appears that that discretion has been prejudicially exerted against the right of the accused to cross-examine the witness."

(4) It is usual in cross-examination that great liberty is allowed by the court.—Jones on Evidence, supra. And while the right to cross-examine may be afforded the defendant, yet if it is so circumscribed and limited as to strip it of its benefit, the right "loses its substance and becomes a shadow." Sustaining an objection to a proper question on cross-examination was held reversible error in *Parrish v. State, supra.* See 139 Ala., pages 45, 46, of opinion, 36 South. 1012. See, also, *De Arman v. State,* 71 Ala. 351, eleventh headnote.

(5) We are mindful that in passing upon questions of this character this court should act with great caution. To that end

the record has been most carefully examined. We do not think it would serve any good purpose to discuss the testimony further. Suffice it to say that we are of the opinion that the right of cross-examination was too narrowly confined, and that the error was of such prejudicial character as to call for a reversal of the case. The only objection by the state was that the questions asked failed to hypothesize all the facts—meaning that they did not enumerate all the injuries found on the face of the deceased. The question did hypothesize, however, the most material fact—that of the fracture of the skull, which caused the death. But whether so or not, on cross-examination it was not necessary to so hypothesize all the facts.

(6) Counsel argue upon the assumption that this record shows the question asked by the state of the defendant, if he did not belong to a detective agency, or was not sent down as a detective for the Tennessee Coal & Iron Company. We find no such question in the record before us, but only find in the testimony of the defendant a denial of that charge, given in a narrative form, with no objection or exception. It is clear, therefore, that the record in this respect presents nothing for review.

(7) The question as to argument of counsel for the state doubtless will not arise upon another trial and needs no treatment here. It results that the judgment is reversed, and the cause remanded. The defendant will remain in custody until discharged by due course of law.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and SAYRE, JJ., concur. MCCLELLAN, SOMERVILLE and THOMAS, JJ., dissent, entertaining the view that the rulings of the court upon which the reversal is based were matters as to which the trial court exercises a discretion, and of which no abuse is disclosed by the record.