---

(No. 15283.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* GERALD BOSTON, Plaintiff in Error.

*Opinion filed June 20, 1923.*

1. CRIMINAL LAW—*statute requires jury list to be adopted by formal resolution of supervisors.* The statute requires the jury list as finally compiled to be adopted by formal resolution of the board of supervisors and does not mean that such list shall be made up by the action of the individual members of the board, although in practice it is proper for the individual supervisors to suggest the persons from their respective towns to be placed on the list to serve during the year as petit jurors.

2. SAME—*supervisors should exercise judgment in selecting the jury list.* The board of supervisors should exercise judgment in the selection of the persons to be placed upon the jury list, and to select only adult persons under sixty-five years of age not exempt from service, who understand the English language, and who are free from all legal exceptions, in possession of their natural faculties, of fair character, of approved integrity, of sound judgment, and well informed.

3. SAME—*statutory provisions for selecting jury must be substantially complied with.* Mere irregularities in failing to comply strictly with the statutory provisions, if not prejudicial, will not invalidate the list of jurors, but a disregard of the material provisions which are designed to secure an impartial trial is not a mere irregularity and is ground for challenging the array.

4. SAME—*defendant is entitled to a jury selected according to law.* The jurors in a criminal case are the judges of the law as well as the facts, and the defendant being entitled to a trial in accordance with the law of the land, is entitled to have the jury which tries him selected in compliance with the requirements of the statute.

5. SAME—*when evidence of birth of a child is proper in rape case—instruction.* In a prosecution for rape it is proper to prove that a child was born to the prosecuting witness, where the date of its birth is within the natural period of gestation reckoned from the act of intercourse on which the prosecution relies for a conviction, and it is proper to show that the child was or was not a full-term child; but the jury should be instructed that proof of the birth of a child does not necessarily prove the charge of rape, nor does it prove that the accused was the person with whom the prosecutrix had intercourse.

6. SAME—*prosecutrix may testify to other acts of intercourse with defendant.* In a prosecution for rape the court may permit the prosecutrix to testify to other acts of sexual intercourse with the defendant for the purpose of showing the intimate relations existing between the parties.

7. SAME—*when proof of prosecutrix's intercourse with other parties is admissible.* Where it is proved, in a prosecution for rape, that a child was born to the prosecutrix within the period of gestation after the time of the alleged offense, it is proper to prove that the prosecutrix had intercourse with other parties than the defendant; but such proof must be limited to such time as would account for the birth of the child, and where the questions put to the prosecutrix are general and not so limited, it is proper, on objection, to exclude such evidence.

8. SAME—*proper foundation must be laid for admitting testimony for the purpose of impeachment.* If the conduct of a witness prior to his being called to testify is inconsistent with the testimony given by him on the trial he may be cross-examined with respect to his inconsistent conduct for the purpose of laying a foundation for impeachment, but direct testimony of inconsistent conduct without first laying a proper foundation for its admission is properly excluded.

9. SAME—*when defendant cannot complain of minor errors in rulings on instructions.* Counsel in a criminal case should not submit a large number of stock instructions, and a defendant who has submitted a large number of instructions, many of which were given, is not in a position to complain of minor errors in the giving or refusing of instructions.

WRIT OF ERROR to the Circuit Court of Marion county; the Hon. F. R. DOVE, Judge, presiding.

NOLEMAN, SMITH & DALLSTREAM, and E. B. VANDERVORT, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, CHARLES F. DEW, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Gerald Boston, a male person over the age of seventeen years, was convicted at the September, 1922, term of the circuit court of Marion county of the crime of having carnal knowledge of Bulah Huddleston, an unmarried female person under the age of sixteen years, and was sentenced to imprisonment in the penitentiary for the minimum term of one year.

By a challenge to the array plaintiff in error questions the method of selecting the jury list from which the jurors who tried this cause were drawn, and also the method of drawing said jurors. W. H. Betts, county clerk, testified that in September, 1921, the county board selected a list of persons to serve as jurors; that this list was on file in his office when the jurors who were to serve during the September, 1922, term of the circuit court were drawn; that at the September meeting each year each supervisor elected in April of that year presents to the county clerk a list containing one-tenth of the legal voters of his town; that each of the new supervisors then selects from this jury

list the persons who are to be placed on the short list from which the jurors are to be drawn; that no other jurors are selected from the jury list; that the names selected by the several supervisors are by the county clerk written on slips of cardboard; that the names submitted by the individual supervisors are kept separate, a rubber band being placed around each bundle of cardboard slips; that there are seventeen towns in the county, the town of Centralia having twelve precincts; that when persons are drawn for jury service a proportionate number is drawn from each town; that when the short list from any town is exhausted the county clerk calls the supervisor's attention to it and he selects another group from the jury list, and the names of the persons in this new group are written on cards and kept in a separate bundle for future drawing; that when the persons who were to serve as jurors in the circuit court during the two weeks when plaintiff in error was tried were drawn the circuit clerk came to the office of the county clerk; that it was decided to draw thirty-six names for the two weeks' service; that in order to distribute the jurors drawn among the several towns the county judge and the county clerk decided how many were to be drawn from each town; that the rubber band was removed from the bundle of cards from the town of Alma, which was first on the list alphabetically, and these names were placed in the box kept for the purpose; that the box was well shaken by witness; that the circuit clerk was blindfolded; that the county judge told him to draw from the box the number of cards theretofore agreed upon, which was either two or three; that the circuit clerk drew the number specified; that the remaining cards were then taken from the box and a rubber band placed around them; that the cards made up from the list selected from the town of Centralia were then placed in the box and the circuit clerk directed to draw therefrom six or eight cards; that this method was continued until a certain agreed number was selected from each of the seven-

teen towns; that the board of supervisors has nothing to
do with the apportioning of these names among the several
towns. The record of the proceedings of the board of
supervisors for the September, 1921, meeting contains this
minute: "The time having arrived for the filling of the
jury list, the several supervisors submit their lists. On mo-
tion the names submitted are to constitute the petit jurors
for the ensuing year."

The act concerning jurors provides that the county
board of each county shall annually, at or before its Sep-
tember meeting, make a list of not less than one-tenth of
the legal voters of each town or precinct in the county, to
be known as the jury list, and that the persons selected for
jury service shall be taken from this list until it is exhausted
or until the expiration of two years from the time of mak-
ing such list, when a new list shall be made. In all coun-
ties in this State except Cook, the county board shall in
September of each year select from the jury list a number
of persons equal to 100 for each trial term of the circuit
court, and other courts of record except county courts,
which may be provided by law to be held during the suc-
ceeding year, to serve as petit jurors. When this selected
list has been filed with the county clerk he is required to
write the name and residence of each person selected up-
on a separate ticket, and he is then required to place the
whole number of tickets containing the names of the per-
sons selected by the county board from the jury list to serve
as petit jurors during the year into a box to be kept by him
for that purpose. At least twenty days before the first day
of any trial term of the circuit court the clerk of such
court shall go to the office of the county clerk and in the
presence of the county judge and the county clerk, after the
box containing all of the names of those selected for petit
jury service has been well shaken by the county clerk, shall,
after being blindfolded, without partiality draw from said
box the names of not less than thirty persons for each two

309—6

weeks such court will probably be in session for the trial of common law cases, to constitute the petit jurors for that term.

. The language of the statute is so simple and so plain that it seems strange that there should be such a want of compliance with its provisions as this record shows. Nothing seems to have been done as the statute directs. As we understand the record, supervisors from one-half of the towns of the county furnish a jury list each year. From this list each of the new supervisors (those elected in the preceding April) selects a few names from his town to be placed on cards and used for the purpose of drawing persons to serve as petit jurors. When the circuit clerk goes to the county clerk's office to draw persons for jury service .he is directed by the county clerk and the county judge to draw a few from each of seventeen boxes. Toward the end of the year, if there were but two persons left on the list for any particular town and the county judge and the county clerk should decide that two should be selected from that town, the procedure would require these two cards to be placed in the box, the box to be well shaken by the county clerk, and the circuit clerk, after being duly and properly blindfolded, without partiality to draw from said box the two cards.

The provisions of the statute are so plain and unambiguous that the simplest directions we can give for the preparation of the jury list, the selection of the names of the persons to be placed in the jury box, and the method of drawing the jurors, is that the statute be read and followed. When the statute says that the jury list is to be made by the board of supervisors and that the persons who are to serve during the year as petit jurors are to be selected from this list by the board of supervisors it does not mean that these things are to be done by the individual supervisors. The fact that the supervisors are gathered at the court house for the purpose of attending a meeting of the board

of supervisors does not render their individual acts the act of the board. (*Marsh* v. *People,* 226 Ill. 464.)   In practice the individual supervisors no doubt suggest the persons from their respective towns who are to be placed on the jury list and who are to be selected to serve during the year as petit jurors, and it is right that they should; but the two lists as finally compiled should be adopted by formal resolution of the board.   It is expected that the board of supervisors will exercise judgment in the selection of the persons to be placed upon the jury list, and that it will select only adult persons under sixty-five years of age not exempt from serving on juries, and who understand the English language and are free from all legal exceptions, in possession of their natural faculties, of fair character, of approved integrity, of sound judgment, and well informed.   Mere irregularities in failing to comply strictly with the provisions of the statute which are not prejudicial to the parties do not invalidate the list, but a substantial compliance with the law is necessary, and a disregard of the material provisions which make up the essential features of the system and are designed to secure and preserve a fair and impartial trial is not a mere irregularity and is ground for challenging the array.   Where no attempt has been made to select a jury in accordance with the requirements of the statute, as the record shows to be the fact in this case, the challenge to the array must be sustained. *People* v. *Mankus,* 292 Ill. 435; *Healy* v. *People,* 177 id., 306; *Borrelli* v. *People,* 164 id. 549.

Counsel for the People argue that the method adopted guarantees to the new supervisors elected each year an opportunity to participate in the preparation of the jury list, and that the apportioning of the jurors drawn for jury service from the several towns by the county judge and the county clerk provides a representative jury from the entire county.   A sufficient answer to all this argument is that there is no law justifying such procedure.   Further answer is that there was no attempt to apportion the jurors among

the several towns in accordance with the population. The towns of Alma, Romine and Omega each contain about one per cent of the population of the county and the town of Centralia contains fifty per cent, yet there were on the panel of twenty-four which was on duty at the time of the trial two from each of these towns. The jurors in a criminal case are the judges of the law as well as the facts, and the defendant being entitled to a trial in accordance with the law of the land is entitled to have the jury which tries him selected in compliance with the requirements of the statute.

Plaintiff in error contends that the court erred in admitting proof of the birth of a child to the prosecuting witness and proof of other acts of sexual intercourse than the one relied upon for conviction. It is proper in a case of this character to prove that a child was born to the prosecuting witness where the date of its birth is within the natural period of gestation reckoned from the act of sexual intercourse on which the prosecution relies for a conviction, and it is also proper to show that the child was or was not a full-term child. (*People* v. *Findley,* 286 Ill. 368; *People* v. *Duncan,* 261 id. 339.) The proof in this case showed that the child was born October 12, 1921, which was nine months after January 6, 1921, the date of the act on which the prosecution elected to ask for a conviction. The normal period of gestation is about 280 days. The purpose of admitting this testimony is to corroborate the statement of the prosecutrix that she had sexual intercourse at a certain time. Proof of the birth of a child does not of itself prove the charge of rape nor does it tend to prove that the accused was the person with whom the prosecutrix had sexual intercourse, and the jury in a case of this character should be so instructed. In the case at bar the fact of the birth of the child was proven by prosecutrix, the attending physician, the mother of the prosecutrix and a neighbor. There being no dispute of the fact, there was no reason for

repeating four times proof of this uncontroverted collateral circumstance. The court properly permitted the prosecutrix to testify to other acts of sexual intercourse with plaintiff in error for the purpose of showing the intimate relations existing between the parties. *People* v. *Duncan, supra; People* v. *Gray,* 251 Ill. 431.

Plaintiff in error contends that the court erred in refusing to admit a photograph which purported to show the condition of the portion of his farm near where the act is alleged to have occurred. The prosecutrix testified that the act occurred in a hollow near the house of plaintiff in error. The photograph is taken from such a position that the ground appears to be nearly level, which is contrary to all the proof in the record. The photograph is not a correct representation of the conditions that existed at the time the act is alleged to have occurred nor does it purport to show the location described by prosecutrix. The court properly denied its admission.

Plaintiff in error contends that the court erred in not permitting a cross-examination of the prosecutrix with respect to acts of sexual intercourse with parties other than plaintiff in error. In this case it would have been proper to have questioned prosecutrix with respect to other acts of sexual intercourse during the months of December, 1920, and January and February, 1921, but the questions to which objections were sustained were not thus limited. Such proof was material only for the purpose of accounting for the birth of the child to prosecutrix, and it was immaterial whether other men had had carnal knowledge of her at a time when in the course of nature a child could not have been the product of such act or acts. There was no error in sustaining objections to these general questions.

It is also contended that the court erred in not permitting plaintiff in error to show that prosecutrix and her parents maintained friendly relations with plaintiff in error and his parents throughout the period of pregnancy of prosecu-

trix. Neither the conduct of the prosecutrix nor of her relatives subsequent to the commission of the act would be binding on the People, and so it is immaterial except for purposes of impeachment, and then only in case proper foundation is laid. (*Bean* v. *People,* 124 Ill. 576.) The attempt to show the inconsistent conduct of prosecutrix and her parents was by direct examination of the father of plaintiff in error. If the conduct of a witness prior to his being called to testify is inconsistent with the testimony given by him on the trial he may be cross-examined with respect to his inconsistent conduct for the purpose of laying a foundation for impeachment, but direct testimony of inconsistent conduct, as was offered in this case, without first laying a proper foundation for its admission, is properly excluded.

Many other errors are assigned and argued, but they are not of a character likely to arise on another trial and so we do not extend this opinion to discuss them.

Plaintiff in error overburdened the trial court by offering thirty-four instructions, eighteen of which were given, and he is not in a position to complain of minor errors appearing in them. All of the law necessary to be known by a jury to properly dispose of a case of this character can be fully given in a dozen instructions. The practice of submitting a large number of stock instructions has been repeatedly condemned by this court. *People* v. *Heard,* 305 Ill. 319; *People* v. *Miller,* 292 id. 318; *Freesen* v. *Scott County Drainage District,* 283 id. 536.

The judgment is reversed and the cause is remanded to the circuit court of Marion county.

*Reversed and remanded.*