STATEMENT BY THE COURT.
This suit was instituted by appellant in the Pulaski County Circuit Court against appellee to compensate an alleged injury received by appellant in an automobile collision, which occurred on the twenty-first day of May, 1932, at the intersections of Main Street and Washington Avenue in North Little Rock.
The testimony in reference to the collision introduced on behalf of appellant in the trial court was to the effect: Appellant testified that between 9 and 10 o'clock A.M. on May 21, 1932, he was traveling south on Main Street in his ice truck and proceeded in this direction until he came to the intersection of Main Street and Washington Avenue at which point he stopped his truck and looked in all directions for approaching traffic; that it was his purpose to turn east on Washington Avenue and proceed to an ice plant, located nearby, to get a supply of ice for delivery to his customers; that when he stopped he observed appellee's truck about midway of the block on Washington Avenue going in an easterly direction, thereupon he proceeded to drive his truck into the intersection and turn to the left to proceed east on Washington Avenue, and about the time he made the *Page 888 
turn appellee's truck struck the rear of his truck violently; that appellee's truck was loaded with cotton. Appellant further testified that the first he knew after the collision was after he had reached home; whereupon he was sent to the hospital, where he remained about six weeks; that when he regained consciousness, he was suffering severe pain and has suffered such pain since the injury.
Dave Hooks, the father of appellant, testified that the truck driven by appellant, May 21, 1932, was badly damaged, that the steering wheel was broken, the column around the steering rod was broken, seven spokes were broken in the left rear wheel, the rear axle was bent, and the front axle sprung; that on the afternoon of the collision and the next day all the damages to the truck were repaired. That since the injury appellant has not been able to do any kind of work.
H. W. Hewgley, a witness on behalf of appellant, testified, that he saw the collision between appellant's truck and appellee's truck; that he caught up with appellee's truck before it got to the end of the bridge and started around it when it picked up speed and he was forced to drop back behind it; that the transfer truck was running 25 or 30 miles per hour at the time. He knows that because he undertook to go around the truck, and the driver speeded up and prevented him from going around it; that a negro was driving the transfer truck, and there were three or four other occupants in the truck with him; that the driver of the transfer truck did not stop or slacken its speed before the collision; that there was nothing to obstruct the view of the driver of the transfer truck; that he went to the scene of the accident; the driver of the transfer truck started to run, but the policeman stopped him. If the driver of the transfer truck applied his brakes, he could not tell any difference in its speed. The ice truck was knocked about ten feet by the impact of the transfer truck, and the impact of the collision was pretty great.
Charles Schlosberg, testified in behalf of appellant, that he saw the collision between the ice truck and the *Page 889 
transfer truck on May 21; that the transfer truck looked like it was going pretty fast for a truck; that the reason he took an interest was because he thought it would hit the ice truck and witness' car and witness hollered: "Look out!" The negro grabbed his emergency brake, and the next thing he knew he hit him. There was nothing to keep the negro from swerving the transfer truck to the left and going around the ice truck. A tire on the ice truck was smashed and looked like it was cut. He did not examine the tire. The ice truck was knocked off around the corner. The transfer truck was running faster than ten miles per hour.
George C. Davis, another witness on behalf of appellant, testified: that on the day of the collision he saw a policeman on the North Little Rock force; that he saw the collision just after the crash; that at the time of the collision he was about a half block away. He gay the transfer truck prior to the injury between Main and Maple streets; the transfer truck was running a little fast, and this attracted his attention. He turned around to talk to some one and heard the crash. When he reached the scene of the accident to make an investigation, the hind wheel of the ice truck was in behind the bumper of the transfer truck, and he had a little trouble in getting them separated. From the marks on the pavement the trucks hit about five feet from the curb. He judged this from the skid marks on the pavement. The ice truck was south of the center line of the street; that there was not anything to have kept the transfer truck from swerving to the left at the time of the collision. Witness told the driver of the transfer truck to get his boss, and if they would agree to pay the damages it would be all right, and he would make no arrest. Witness cannot say just how fast the transfer truck was running, but it was going too fast.
H. G. Harrod testified in behalf of appellant that he saw the collision between the appellant's transfer truck and the ice truck on May 21. He saw the ice truck run up to the intersection and stop and then proceed across the street; that about the time the hind wheels of the ice truck got across the street car track, the transfer truck *Page 890 
hit him; that there was nothing to obstruct the view of the negro driver of the truck. That witness first saw the transfer truck when it was about the middle of the block and the ice truck had stopped at the intersection. Witness remained at the scene of the accident long enough to get the trucks loose. The thing that attracted witness' attention to the transfer truck was that it was a large truck going at a fast rate of speed.
The testimony on behalf of appellee was to the following effect: Will Johnson, a negro, testified that he was the driver of the General Transfer truck which collided with the appellant's ice truck on May 21, 1932; that his truck was proceeding east on Washington Avenue, and the ice truck was coming south on Main Street; that when witness was entering the intersection, appellant speeded his truck up and ran in front of the witness' truck; that witness applied his brakes and swung his truck to the left but struck appellant's hind tire and cut a little gash in it; that witness was driving about ten miles per hour; that witness first saw the ice truck 15 or 20 feet from the corner; that the ice truck was running about fifteen miles per hour and did not stop at the intersection; that the brakes on the witness' truck were in good condition; that the trucks remained in the same condition for about ten minutes after the collision; that the only damage to the ice truck was a little gash in the left tire not enough to puncture it; that the ice truck skidded about 3 feet in the collision, but the front part did not skid at all; that witness was in the intersection of Main Street when appellant speeded up and ran in ahead of his truck; that after the ice truck speeded up it was going about 20 miles per hour, but witness' truck had slowed down, and he was going about seven miles per hour. Witness never drives more than 15 miles per hour.
Will Barnett, testified in behalf of appellee, that he was with Will Johnson at the time of the collision between the two trucks. They were traveling east on Washington Avenue, and appellant was traveling south on Main Street. Before we got to the intersection appellant crossed the street. Appellant was about ten feet from the *Page 891 
curb and Will saw that he could not miss the car and put on his brakes. He did not knock the ice truck any place, kind of slid it back around about four feet. We were going about 10 miles per hour. When witness first saw the ice truck, it was crossing the street and Will was crossing the street.
B. M. Smart, a witness on behalf of appellee, testified: that he is a photographer, and at the request of appellee took photographs of the two trucks, which were in the collision, on the 30th of May, 1932, which were offered in evidence.
In view of the disposition made of the case, we deem it unnecessary to state the proved facts in reference to the alleged injury to appellant.
On the above statement of facts as to the liability of appellee, the cause was submitted to a jury, and it returned a verdict in favor of appellee. Appellant prosecutes this appeal to reverse the judgment of the trial court.
(after stating the facts). From the foregoing statement of facts, it is perfectly apparent that there was a sharp conflict in the testimony as to which truck had the right-of-way in the intersection at Main Street and Washington Avenue at the time of the collision. The damage or injuries to the respective trucks caused by the impact was an important circumstance in determining the rate of speed the trucks were making at the time of the collision. It was the contention of the appellee that the impact between the two trucks was slight and caused but little damage. On the other hand, it was the contention of appellant that the impact between the two trucks was great, and that the ice truck was badly damaged by reason of the collision. Appellant further contended, and introduced testimony in support of it, that the impact was of such force as to produce the injury to his back about which he now complains. Some of appellant's witnesses testified that appellant's truck was knocked ten feet by the impact. Other witnesses testified that the steering rod was broken loose from the car and *Page 892 
the ice truck was otherwise badly damaged. For the reason aforesaid, one of the main issues to be determined by the jury was the enormity or insignificance of the collision.
One contention for reversal of the case is that the trial court permitted appellee to introduce in testimony photographs of the two trucks taken a week or ten days after the collision and at a time when the damage had been repaired. Appellant objected to the introduction of these photographs at the time, and stated specifically that the trucks were not in the same condition, at the time the photographs were taken that they were immediately after the collision. The trial court overruled this objection and permitted the introduction of the photographs. In doing this the trial court erred, which calls for a reversal of the case.
It is a well-established rule of law that when the situation and surrounding circumstances are subject to change, photographs, to be admissible as evidence, must have been taken at the time of the transaction or before the situation and circumstances have undergone a change.
Section 359, art. "Evidence," 10 R.C.L., p. 1157, states the rule as follows: "When the situation and surrounding circumstances are subject to change, photographs, to be admissible as evidence, must have been taken at the time of the transaction or before the situation and circumstances have undergone a change."
According to the uncontradicted testimony in this case, the photographs of the two trucks which were in the collision were not taken until a week or ten days after the collision, and at that time appellant's ice truck had been fully repaired. We cannot say to what extent the jury may have been influenced by this incompetent testimony.
The photographs were evidently introduced for the purpose of showing that the trucks were not badly damaged by the collision. If the photographs were introduced for any other purpose, their effect should have been limited by proper instructions by the court. *Page 893 
Other alleged errors are brought forward and insisted upon for a reversal of the case, but we do not deem them of sufficient importance to discuss in this opinion.
For the error indicated, let the judgment of the circuit court be reversed, and the cause be remanded for a new trial.