44 So.2d 777

**McKEE v. STATE.**

**5 Div. 277.**

Court of Appeals of Alabama.
May 17, 1949.

Rehearing Granted Aug. 15, 1949.

Further Rehearing Denied Oct. 5, 1949.

Affirmed on Mandate Feb. 28, 1950.

Omar L. Reynolds and Reynolds & Reynolds, of Clanton, for appellant.

A. A. Carmichael, Atty. Gen., and Wm. N. McQueen, Asst. Atty. Gen., for the State.

CARR, Judge.

Upon a reconsideration of this cause, on rehearing, we have reached a conclusion contrary to that expressed in our original opinion. The former opinion is, therefore, set aside and withdrawn, and the opinion following is substituted therefor.

This is the second appeal of this cause. 33 Ala.App. 171, 31 So.2d 656, certiorari denied 249 Ala. 433, 31 So.2d 662.

At the trial incident to this appeal the accused was convicted of manslaughter in the first degree.

Judge Harwood, for this court, set out the evidence in the former opinion with considerable care and in much detail. In the main, the evidence there delineated appears in the instant record with little change. In the case at bar the defendant did not testify, nor did his little son.

Appellant's counsel has favored us with a very ably prepared brief.

On the questions of the propriety of the refusal of the general affirmative charge and the action of the court in denying the motion for a new trial, it appears to us that the holdings in the prior opinion are conclusive.

It is stressed that in the absence of the little boy's testimony we do not have any evidence of motive.

The authorities are committed to the view that the presence or absence of motive is always a material subject of inquiry in a homicide case. It becomes a matter of more concern when the identification of the criminal agency depends entirely upon circumstantial evidence. However, it is not in any case an element of burden of proof that the law imposes upon the State.

The doctrine is aptly stated in the body of the opinion in the case of Clifton v. State, 73 Ala. 473: "The criminal act, and the connection of the accused with it, being proved beyond a reasonable doubt, the act itself furnishes the evidence, that to its perpetration there was some cause or influence moving the mind. There is no room for speculation as to its nature or character, and it avails nothing to the defense, that of it affirmative evidence is not adduced."

See also, Ward v. State, 182 Ala. 1, 62 So. 703; Stone v. State, 105 Ala. 60, 17 So. 114; Wingard v. State, 247 Ala. 488, 25 So.2d 170; Jones v. State, 13 Ala.App. 10, 68 So. 690; Mount v. State, 32 Ala. App. 235, 24 So.2d 142.

We do not think that the rather remote incident of the domestic discord, to which the little boy deposed, was of sufficient potency to authorize us in holding that without this evidence the affirmative charge was due the appellant.

As we have indicated, the defendant did not testify in the case at bar. We have carefully read his testimony at the former trial. In the instant case, several of the witnesses testified with reference to statements that the accused made to them when he related the circumstances of the main event. He admitted to them his presence at the home at the time his wife died.

■ His testimony on the former trial tended to establish his innocence and was in every aspect favorable to this conclusion. In the absence of this evidence we cannot hold that the State failed in its proof and the affirmative charge should have been given in appellant's behalf.

It appears to us that we have here a case much stronger in factual purport than was presented by the record in the case of Kozlowski v. State, 32 Ala.App. 453, 27 So.2d 811, certiorari granted 248 Ala. 304, 27 So. 2d 818. In the latter case there was no evidence of external violence and the hazards of the fateful journey in the small boat were made evident by the proof. It is true there was some evidence of a likely motive for the husband to kill his wife; however, this related to incidents of slight evidential value.

In the instant case the proof in its various aspects makes a case much more factually favorable to the State.

On the former appeal we reversed the judgment of the court below because of the erroneous introduction of exhibit "J", which was a photograph of decedent's body after dissection. At the instant trial this picture was not tendered in evidence.

Timely objections were interposed to the introduction of each of the other photographic exhibits. The point is particularly stressed that as a preliminary proof to their introduction it was not shown that the photographs, taken some eight days after death, accurately and correctly portrayed wounds on the body that were present at the time of decedent's death.

In other words, it is urged that for aught appearing from the evidence the various wounds and bruises depicted by the pictures could have been occasioned by the handling of the body in preparation for burial, disinterment, etc.

In the former opinion Judge Harwood described the various exhibits with which we are now concerned. To this description may be added that the photographs disclose not only what appears to be distinct wounds and bruises on the body, but also portions of skin discolorations.

Counsel is correct in his position with reference to the lack of preliminary proof. In fact, there was affirmative proof that some of the depicted wounds or bruises were not seen by any of the various persons who observed the dead body, and this included the embalmer. We make particular reference to exhibit "H", which shows a bruise or discoloration on the forehead of the deceased.

■ The science of photography has developed very rapidly in recent years, and it has come to be recognized as a convenient and commodious method by which facts may be vividly disclosed. When properly taken, developed, and identified, photographs are judicially accepted in evidence if they are material to the factual issues. Because of the very nature of this evidence, great care should be observed in the en-

forcement of the rules applicable to its introduction.

This requirement is more important in some cases than in others. It goes without saying that in some cases irreparable injury might follow if the rule is not observed, in others the effect would not be harmful.

■ Among the essential requirements to the introduction of photographs is that the depicted scene or objects should accurately represent the subject matter at the time when its appearance is relevant ·and material. People v. Boston, 309 Ill. 77, 139 N.E. 880; Wimpling v. State, 171 Md. 362, 189 A. 248.

"One offering a photograph as evidence must show by extrinsic evidence that the photograph is an accurate and faithful representation of the place, person, or subject which it purports to portray." 20 Am. Jur., Sec. 730, p. 609.

In the case of Wesley v. State, 32 Ala. App. 383, 26 So.2d 413, 417, we reviewed a question relating to the introduction of post-mortem photographs. In response we held: "Based upon analogous cases we declare the rule to be that when a photograph of a wound upon a dead body is offered in evidence it must be first shown by competent proof that the photograph is an accurate portrayal of the wound it is to depict, as of the time the wound was inflicted. This was not done in the case at bar and in our opinion the trial judge erred to a reversal in overruling the defendant's objection to the introduction of each of said photographs in evidence."

See also, Pinkerton v. State, 30 Ala.App. 103, 2 So.2d 323.

■ The time in relation to the main event at which photographs were taken does not necessarily control their admissibility. The important question is the probability of change in the conditions or objects shown.

In the case of Martin v. Moore, 99 Md. 41, 57 A. 671, it was held that in the absence of proof of its correctness, a photograph of plaintiff in an action for assault and battery, taken on the day of the assault, to show plaintiff's injuries was inadmissible.

In Porter v. Buckley, 3 Cir., 147 F. 140, 78 C.C.A. 138, photographs were held properly excluded on the ground that they were taken more than a year after the accident, and disclosed conditions which could not be proved to have been the same at the time of the accident.

See also, Goldsboro v. Central R. Co., 60 N.J.L. 49, 37 A. 433; Hampton v. Norfolk & W. R. Co., 120 N.C. 534, 27 S.E. 96, 35 L.R.A. 808; Hooks v. General Transfer & Storage Co., 187 Ark. 887, 63 S.W.2d 527; Chicago & E. I. R. Co. v. Crose, 214 Ill. 602, 73 N.E. 865, 105 Am.St.Rep. 135; State v. Matthews, 191 N.C. 378, 131 S.E. 743.

In the case at bar the State contended that the cause of death was a ruptured spleen and this was occasioned by a blow inflicted on the body of the deceased by the accused.

To substantiate the position that there was considerable physical abuse incident to the fatal injury, the prosecution introduced the photographs in question.

■ It is very evident that if the wound marks were not in fact on the decedent's body at the time of death a serious and irreparable injury inured to the rights of· the accused. This essential inquiry should not have been left in doubt by this failure in the proof.

Dr. Rehling's testimony is delineated in the former opinion. This appears without· material change in the instant record.

In the case at bar, after the toxicologist stated that he had an opinion, based on the autopsical examination, as to what caused the decedent's spleen to rupture, he was asked this question: "What then is your best judgment and opinion as to the cause of the rupture to that spleen in the manner in which you found it?"

Over timely objections of appellant's counsel, the witness answered: "The rupture in the spleen was in my opinion the result of that rib which I have described as curved at that point being pressed in by some external force into that spleen causing it to rupture at that point and produced a fatal hemorrhage. An external force; a blow of some sort—"

178

Counsel then moved to exclude that portion of the reply in which the toxicologist stated "a blow of some sort."

It was posed by the objections to the question and the indicated motion to exclude that this is an unauthorized conclusion of the witness and an invasion of the province of the jury. Particularly in brief it is urged: " * * * and we submit that the force of Dr. Rehling's testimony was to lead the jury to believe that it didn't happen by a fall, but that some one struck Mrs. McKee a blow of some sort, that is, with a fist or with some sort of instrument."

On cross examination Dr. Rehling testified that the spleen could have been ruptured by a fall. More specifically, "If she had fallen on that side on some object or suddenly became unconscious and fell her full length."

The jury, of course, had the benefit of this further explanation of the purport of the toxicologist's statement on direct examination.

■ It is a legal truism that whether or not a witness is shown to possess the requisite qualifications to give evidence as an expert is a matter of preliminary inquiry to be determined by the court and a conclusion of the question rests largely within the discretion of the trial judge. Unless a clear abuse appears, the rulings with reference thereto will not be disturbed on appeal. Lovejoy v. State, 33 Ala.App. 414, 34 So.2d 692; Hicks v. State, 247 Ala. 439, 25 So.2d 139.

The State examined Dr. Rehling at some length relating to his technical knowledge and training. In this connection the toxicologist testified that he has a bachelor's degree from Auburn in chemical engineering, a master's degree in chemistry from that institution, a Ph. D. in chemistry and biologic science from the University of Wisconsin. He stated that he had been connected with the State Department of Toxicology for about eleven years and had been its director for three years; that during this period he had performed or assisted at a hundred or more exhumations of human bodies. He explained in detail the extent of his study of and experience with the human anatomy.

In the case of Kitchens v. State, 31 Ala. App. 239, 14 So.2d 739, 741, Dr. Rehling appeared as a witness. He was asked this question: "Now, Doctor, from that condition of that skull there, in your opinion, could that condition be caused by a blow or blows on the head?" To which he replied: "The bruise and fracture which I have described as being found on the left back of the head is the result of a blow, one or more, by some blunt object, to that area of the head. And that blow by the blunt instrument—a blow by a blunt instrument—caused a brain hemorrhage, and it resulted in the death of this man, in my opinion."

In response to the inquiry this court sustained the action of the trial judge in permitting the introduction of this evidence.

■ We are clear to the conclusion that the court did not err in his rulings of instant concern. Collins v. State, 250 Ala. 58, 33 So.2d 18; Roan v. State, 225 Ala. 428, 143 So. 454; Cunningham v. State, 22 Ala.App. 583, 118 So. 242; Rash v. State, 61 Ala. 89; Simon v. State, 108 Ala. 27, 18 So. 731; Madley v. State, 192 Ala. 5, 68 So. 864; Wilson v. State, 195 Ala. 675, 71 So. 115; Mitchell v. State, 18 Ala.App. 471, 93 So. 46; Hicks v. State, 247 Ala. 439, 25 So.2d 139; Thomas v. State, 249 Ala. 358, 31 So.2d 71.

On account of indicated error, it is ordered that the judgment below be reversed and the cause remanded.

Application for rehearing granted.

Reversed and remanded.

BRICKEN, P. J., not sitting.

PER CURIAM.

Affirmed on authority of McKee v. State, 253 Ala. 235, 44 So.2d 781.