(No. 12291.—Judgment affirmed.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD F. FINDLEY, Plaintiff in Error.

*Opinion filed December 18, 1918—Rehearing denied Feb. 6, 1919.*

1. CRIMINAL LAW—*acts of intercourse other than one charged may be testified to.* In a prosecution for the statutory crime of rape, the prosecutrix, in order to show the relations of the parties, may testify to acts of intercourse with the defendant at times and places other than the act charged in the indictment.

2. SAME—*fact of birth of child may be testified to.* In a prosecution for the statutory crime of rape, where the prosecutrix has testified that the defendant is the only person who has ever had intercourse with her, the fact that she has given birth to a child is admissible in corroboration of her testimony as to the rape.

3. SAME—*what instruction is properly refused in a prosecution for statutory crime of rape.* In a prosecution for rape with the consent of the prosecutrix, an instruction is properly refused which authorizes the jury to consider whether the prosecutrix made any outcry and whether she returned to or near the same place where the defendant was after first getting away.

4. SAME—*when an instruction as to circumstantial evidence is properly refused.* In a criminal case an instruction stating the degree of certainty required where the evidence is circumstantial, alone, is properly refused where most of the evidence in the case is positive testimony.

WRIT OF ERROR to the Circuit Court of Lake county; the Hon. C. C. EDWARDS, Judge, presiding.

E. V. ORVIS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JAMES G. WELCH, State's Attorney, and ALBERT D. RODENBERG, for the People.

Mr. CHIEF JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Edward F. Findley, was convicted in the circuit court of Lake county on an indictment of four counts, the first and second charging him with rape of Clara

Snyder by force, and the third and fourth counts charging him with rape with her consent, she being thirteen years of age. The jury found him guilty, fixed his penalty at imprisonment in the penitentiary for a term of five years and found him to be of the age of thirty-nine years. He prosecutes this writ of error to reverse the judgment.

Plaintiff in error was a resident of Mounds, Illinois, and formerly worked there for the Illinois Central Railroad Company as telegraph operator and train dispatcher. He was ordained as a minister of the Church of God, otherwise known as the Pentecost of the Assemblies of the World, on October 17, 1914. He went to Zion City in June, 1915, and preached the doctrines of his church continuously for six or seven weeks, and during his stay there slept at the house of the father of the prosecuting witness. After that stay he frequently returned to Zion City but for shorter visits. The prosecuting witness, Clara Snyder, testified that she was born on October 29, 1901, and that during the time that plaintiff in error roomed at her father's house she slept in the back room, at the head of the stairway. She further testified that plaintiff in error was sleeping during that time in what they called their front room, up-stairs,—the room in front of hers,—and she related the following story concerning this crime: Plaintiff in error had to pass through her room in order to reach his room to go to bed. Her father and mother slept down-stairs. There were also two girls named Scobey staying at the Snyder home, who slept in a room adjoining hers. On the night of September 15, 1915, while she was in bed, asleep, plaintiff in error came into her room, put his arms around her and had sexual intercourse with her, after fondling her awhile and putting his hand on her private parts, and that his act was with her consent. She made no outcry, and there was very little, if any, noise made while he was committing the act. He frequently had sexual intercourse with her thereafter and they became engaged to be married. He corresponded with

286 — 24

her, and she with him after he left there the first time, until April, 1917. He and she also met in Chicago several times, one of those times being in September or October, 1916, and the last time being in December, 1916, and they had sexual intercourse at those meetings. A child was born to her on June 29, 1917. Her father was very much opposed to the religion taught by plaintiff in error and was also opposed to her joining his church and being baptized by him. Her mother was favorably impressed with the doctrines he preached and was anxious that her daughter Clara marry plaintiff in error, and she and her daughter both joined his church and were baptized by him, Clara being baptized in Lake Michigan on September 15, 1915, the day plaintiff in error first had intercourse with her. She never made any complaint or charge against plaintiff in error until after her child was born, he at that time, and for some time before that, being in the State of Washington. The last time she saw him before her child was born was in December, 1916. Between that date and the birth of the child he was in various parts of the country.

Plaintiff in error denied absolutely that he ever had sexual intercourse with the prosecutrix, or that he ever went to her bed and got in bed with her at the time she stated or at any other time. He did admit that he was engaged to her and that they corresponded together as she stated and that she wrote him very loving letters. He also admitted that his room and her room were situated as she stated they were, and that he passed through her room as he went to his room to bed while staying there. He admits meeting her in Chicago in September or October and in December, 1916. It also appears from his testimony that certain persons were baptized by him near midnight of the night prosecutrix charges that he first had sexual intercourse with her, and that they returned from the baptizing to the Snyder home about midnight; that after he went up to his room the father of the prosecutrix came to his room and

told him he would have to leave his house; that he could not stand for his family being kept up so late of nights and being all excited and disturbed over his religious theories; that it was seriously disturbing him and his family and interfering with their rest, but told him further that he need not leave until next morning. It afterwards transpired, however, that Snyder, on the solicitation of the family, consented for him to continue his stay, but plaintiff in error went to bed that night with the information that it was his last night in the Snyder home.

The prosecutrix was well corroborated as to her age and there was no doubt upon that point. She was further corroborated by a letter written by plaintiff in error to her and mailed at Mounds, Illinois, dated June 2, 1916, in which he addressed her in the following words: "Dear sister and sweetheart wife in the Lord Jesus—Greeting to thee in His precious name—Bless His glorious name forever and forever." While the letter does not in any place refer directly to illicit relations between him and the prosecutrix, yet it seems to be written as a defense of their illicit relations from a scriptural standpoint, and apparently comments upon criticisms of some of her neighbors who had criticised their relations with each other. The following are among the sentences that apparently lead to these conclusions: "We have nothing to conceal. Let the whisperers and slanderers talk, but I as a deaf man, as David was, I heard not. (Psalm 38-12, 13, 14, 15.) Glory to Jesus. Thus I was a man that heareth not. Dearest Clara, can't you get to this place? For the mouth of the wicked and the mouth of the deceitful are open against me." "Tell Sister Suttie to remember my last words to her. Tell her the Lord knew we were going to get married before she believed it. Show her this letter, and when she reads these words right here, ask her if she thinks it is wrong to love one's wife or husband. Or if she thinks it is right for the public to be discussing and condemning a man and his wife from wanting to be

together. And if she thinks it is their (the public's) business concerning her relationship with her husband? Jacob kissed Rachel the first time he met her. (Gen. 29-11.) Any man's laws cannot make you my wife. You were my wife before. Though we will obey man's laws we will also obey God's law. 'What God hath joined together let no man put asunder.'" "Don't answer their questions. Tell them to ask your husband, (Bro. Findley.) You do not have to answer questions concerning your relations with your husband. Refer them to me. Tell them to write me for all the information they want. Tell them not to try to take advantage of a man's wife in his absence." The letter further corroborates the prosecuting witness in her testimony to the effect that he told her that their relations were perfectly right,—everything that had happened between them,—and that it was according to the Word.

The jury were fully warranted by the evidence in finding the defendant guilty beyond a reasonable doubt, and unless the court committed reversible error the judgment and sentence of the court should be affirmed.

Plaintiff in error complains that the court committed error in permitting the prosecuting witness to testify that there was a child born to her and when it was born, and also that plaintiff in error was guilty of illicit relations with her other than in Lake county. The prosecutrix testified positively that plaintiff in error was the only person who had ever had sexual intercourse with her. Under the holdings of this court it was proper for the prosecuting witness to tell about the illicit relations of plaintiff in error with her in Chicago, and it does not make any difference that the acts of sexual intercourse with her in Chicago and in Lake county are distinct offenses and were committed in different counties. Such evidence in such a case is admissible to show the relations of the parties at all times during their intercourse with each other, and is admissible as corroboration of the act or crime for which he is prosecuted. (*People* v.

*Gray,* 251 Ill. 431; *People* v. *Duncan,* 261 id. 339.) The birth of the child was shown to be within the natural period of gestation reckoned from the act of intercourse with the accused as testified by her. She testified that he was the only person who had had intercourse with her, and the fact that she had given birth to a child was admissible in corroboration of her story that she had been raped. (*People* v. *Duncan, supra.*) It was also admissible upon another ground. Plaintiff in error by his cross-examination elicited from the prosecuting witness the fact that she was "going with" another young man or boy for a short time very near the time at which the child must have been begotten, and the fact that the child was begotten or had been born to her. To refute this testimony or explain its force it was competent for the People to show that plaintiff in error had had sexual intercourse with her in Chicago at a time corresponding with the exact time when the child was begotten.

Complaint is also made that the court refused to give proper instructions offered on behalf of plaintiff in error, and the complaint is specifically directed to refused instructions numbered 9 and 10. No. 9 was very properly refused because it was not applicable to the case and was not based on any facts warranting such an instruction. The objectionable part of the instruction is found in these words: "That you have a right to consider whether or not the complaining witness made any outcry, whether or not she returned to or near the same place where the defendant was after first getting away, and all facts and circumstances surrounding the case." As heretofore said, all the testimony in the case shows that the sexual intercourse complained of was by consent of the prosecutrix. In such a case there is no occasion or expectation of an outcry on the part of the prosecutrix, and it makes no difference whether she fled from the place or did not do so, or whether she returned, etc. There might be a case, and cases could be stated where the rape was made with force, where such an instruction

would be proper, but this is not such a case. It needs no argument to show that such an instruction would not only be misleading but absolutely improper, and if followed would lead, in any case of statutory rape, to the acquittal of a defendant absolutely guilty of rape with the consent of the prosecutrix.

The tenth instruction was also properly refused because it was not applicable. It states: "The rule of law is, that to warrant a conviction of a criminal charge upon circumstantial evidence, alone, the circumstances should be such as to produce nearly the same degree of certainty as that which arises from direct testimony." This is not a case of circumstantial evidence, *alone.* It is immaterial what a jury should do in a case where the evidence is all circumstantial. This is a case where it is all positive testimony,— *i. e.,* as nearly so as cases of this kind get to be. There are only a few circumstances testified to that might be regarded as circumstantial evidence.

Other instructions are complained of as having been improperly refused by the court. We have examined them carefully and find no sufficient ground for plaintiff in error's claim. Those of them that do state correct propositions of law were properly refused because the same principles of law had already been given to the jury or because they stated mere abstract propositions of law. The jury were fully instructed on behalf of the defendant on all of the propositions of law applicable and necessary to his defense, and the judgment of the court ought to be affirmed.

The motion of the plaintiff in error at the close of the State's case that it elect upon which count it would proceed against him might have been very properly sustained by the court, but it was not reversible error for the court to deny the motion. There was no evidence in the record to sustain the count charging force. The court instructed the jury, in substance, that if they found from the evidence, beyond a reasonable doubt, that the defendant was of the

age of seventeen years and upwards and had carnal knowl-. edge of the prosecutrix, with or without her consent, as charged in the indictment, and that she was under the age of sixteen years and not his wife, the jury should find him guilty. The verdict was therefore returned upon the simple propositions submitted by that instruction. It could make no sort of difference whether the defendant had sexual intercourse with her with force or without force, and he was not prejudiced by the denial of the motion to elect.

It was the province of the jury to determine which was the more worthy of belief,—the prosecutrix or the plaintiff in error. As the verdict is well supported by the evidence and no reversible error appears in the record, the judgment and sentence of the court are affirmed.

*Judgment affirmed.*