(No. 23590.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES BURNS, Plaintiff in Error.

*Opinion filed June 17, 1936—Rehearing denied October 7, 1936.*

MAURICE G. WALSH, and THOMAS L. MURPHY, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and RICHARD H. DEVINE, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, James Burns, was indicted in the criminal court of Cook county for the crime of statutory rape on Betty Marshall on September 12, 1935, she then being

fourteen years of age. He was tried by the court without a jury, found guilty and sentenced to imprisonment in the penitentiary for fourteen years. Burns prosecutes this writ of error for a review of the record.

The defendant resided with his wife, the maternal aunt of the complaining witness, in Chicago. He had been acquainted with the parents of Betty Marshall since his marriage, namely, for more than eleven years, and was a frequent visitor in their home. From the testimony of the prosecutrix it appears that the defendant ravished her during the first week in June, 1935, at the forest preserve district, and that thereafter he frequently had sexual intercourse with her—on two occasions at his home but usually at the forest preserve. She testified that on Thursday, September 12, she met the defendant by appointment at 1:00 o'clock in the afternoon on Higgins avenue, near Milwaukee avenue; that she did so because he had on the previous day directed her to meet him there, adding that unless she complied he would "get her father;" that when she arrived at the appointed place the defendant said, "Get in the car; hurry up!" and that she obeyed; that he thereupon drove to a side street in Edison Park, (a suburban district northwest of Chicago,) where the defendant twice had intercourse with her in the front seat of his automobile; that in the conversation which ensued during the interval between the two acts he again told her if she ever informed her parents he would "get her father," but that she did not know what he proposed to do. Betty testified further that on September 17 the defendant stayed at the home of her parents all night. On this occasion the prosecutrix, her father, (Raymond Marshall,) two brothers and the defendant slept on a sleeping porch, the brothers occupying one bed, her father and the defendant another, and the witness a third, about a foot from the side of the bed on which the defendant lay. Betty stated that about 1:00 o'clock in the morning of the 18th the defendant became indecently fa-

miliar with her, and that her father saw him in the act of taking indecent liberties with her, jumped out of bed and repaired to the kitchen for his gun. The defendant escaped to the street, and his wife, who had been sleeping with her sister, Betty's mother, took his clothes to him and gave him some money. Mrs. Marshall and one of her sons, it appears, succeeded in restraining Marshall from using his gun. Betty said that she, herself, went outside to the defendant. She made no complaint to her family concerning the defendant's relations with her prior to this occurrence.

The testimony of the prosecutrix was corroborated, in part, by her brother Leroy and her father. Leroy, seventeen years of age, testified that on September 12 he saw the defendant and Betty on Imperial avenue, in Edison Park, and that they were headed in a northwest direction, towards Park Ridge; that two days later he questioned the defendant whether he had been out with Betty on the preceding Thursday and that he replied in the negative; that he also asked the defendant if he objected to his wife being informed, and that he again answered in the negative, stating, however, that it would only arouse suspicion. The witness corroborated his sister's testimony with respect to the happening on the porch in the early morning of September 18. Raymond E. Marshall, the father, likewise confirmed the account of the event. According to his testimony it appears that Leroy had informed him of seeing the defendant and Betty in Edison Park on the afternoon of September 12. Marshall testified that although he had regarded the defendant as his best friend, he became somewhat suspicious and desired to ascertain the nature of the relationship, if any, between his daughter and the defendant; that he accordingly feigned sleep when he and the defendant retired; that later, when he observed what was happening, he jumped up and ran for his gun, and that when he reached the porch after obtaining the weapon he found that the defendant had gone.

The defendant was thirty-six years of age at the time of the trial and had been unemployed since the middle of the preceding May. He denied the commission of the act of intercourse on September 12, 1935, and also the numerous other acts testified to by the prosecutrix. He did not, however, account for his whereabouts on the afternoon of the day named, although he was positive he had not been with the prosecutrix at that time. Likewise, he asserted that he had never attempted to take any liberties with her person. He admitted that he was a frequent visitor at the home of Raymond Marshall, his brother-in-law. In particular he stated that during the period from June to September, 1935, he had visited there about twenty-five times, adding that his wife was also present. He testified that during the course of a conversation with Betty at her father's house in the early part of June she asked him to kiss her, and that although he demurred, pointing out that he was too old and also that he was her uncle, she nevertheless insisted. He also stated that upon other occasions when Betty's family and his wife went swimming she asked him to take her out, but that he informed her he could not, owing to the fact that he was married and also because he was her uncle. The defendant's version of the occurrence on the sleeping porch is, that he and his wife arrived at Marshall's home after the evening meal on September 17 and played cards until 11:00 or 11:30, when all the persons present retired; that he and Marshall, together with their wives, had planned to take a trip the next day; that Betty had unsuccessfully sought permission from Mrs. Burns to accompany them; that she urged him to intercede with his wife in her behalf; that when he declined, reminding her that she should attend school because it was the beginning of a new term, she became angry and told him that if he did not grant her request he would wish he had. He further testified that in the meantime he pushed Betty away from him, and that Marshall, her father, arose as if he were

a wild man and wanted to shoot him, exclaiming that he had tried to rape his daughter; that Betty ran to the sidewalk with him; that although she desired to go with him he advised her to return to the house, and that when his wife brought his clothes to him Betty told her the same thing, namely, that she loved him and wished to go away with him. On cross-examination the defendant stated that he did not see Leroy Marshall on September 12 and denied conversing with him thereafter, and, in particular, telling him not to stir up trouble.

Two witnesses testified that they had lived in the same apartment building with the defendant for three and one-half and two and one-half years, respectively, and that his reputation for morality was good.

The defendant makes the contention that there is a fatal variance between the allegations of the indictment and the proof. The indictment returned against him consisted of four counts. So far as material to this inquiry, the first count charged the crime of statutory rape without the consent of the victim, and the second, that the offense was perpetrated with her consent. Upon the conclusion of the People's evidence the prosecution elected to rely upon the second of the four counts. To sustain his contention the defendant maintains that the testimony of Betty Marshall discloses that the illicit intercourse on September 12 was had without her consent. Omitting details, it suffices to observe that the relation which had existed between the defendant and Betty for more than three months prior to September 12 was, to say the least, with her acquiescence. Our conclusion is fortified by the defendant's testimony with respect to her actions immediately after his hurried departure from her father's home on September 18. He stated that Betty followed him to the street, clung to him and insisted that they go away together. If true, his own testimony shows that long prior to September Betty had been his willing victim. His argument that her testimony

shows that she was put in fear of her life on September 12 is without merit. Even if it be conceded that he told her certain things might happen to her father if she did not gratify his desires on that day, the concession cannot avail him, as the evidence is overwhelming that her relations with him, to the extent that she was concerned, were not based upon fear. The asserted variance between the allegations of the second count of the indictment and the proof is not established.

The defendant also earnestly contends that the evidence does not sustain the judgment. To support his contention certain portions of the evidence are scrutinized. In particular, it is urged that the testimony of the prosecuting witness is uncorroborated, and, hence, insufficient to sustain the conviction. The defendant argues that the present case falls within the rule that where a conviction of rape depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness should be corroborated by some other fact or circumstance. (*People* v. *Kazmierczyk,* 357 Ill. 592.) It is equally well settled that testimony of a prosecutrix, uncorroborated by other witnesses, may be sufficient to justify a conviction if clear and convincing. (*People* v. *Sciales,* 353 Ill. 169, and 345 id 118; *People* v. *Andreanos,* 323 id. 34.) With respect to the commission of the crime charged in the indictment, there is the conflicting testimony of the prosecuting witness and the defendant. The trial judge elected to believe the former. Her testimony was reasonable, fair and probable and is abundantly corroborated by the facts and circumstances surrounding the case. Although the defendant categorically denied that he ever had any association with Betty, and, specifically, that she was with him in his automobile on September 12, her brother testified that on the day named he saw them driving in a northwesterly direction from Chicago to the site where the prosecutrix says the offense was committed. The

testimony concerning the events which took place in the early morning of September 18 discloses the defendant's intimacy with her. Furthermore, the testimony concerning other acts of intercourse between the defendant and the prosecuting witness was admissible, as the crime for which the defendant was convicted was committed with the victim's consent. In a prosecution for statutory rape with the consent of the victim additional acts of intercourse may be proved, not for the purpose of establishing distinct offenses but to show the relation and familiarity existing between the parties and to corroborate the testimony of the prosecutrix as to the particular act relied on for conviction. *People* v. *Findley,* 286 Ill. 368; *People* v. *Cassidy,* 283 id. 398; *People* v. *Duncan,* 261 id. 339; *People* v. *Gray,* 251 id. 431.

The defendant also insists that since complaint was not made immediately the testimony of the prosecuting witness is greatly weakened. His argument ignores the fact that she assented to the acts of intercourse on September 12, and, so far as the record shows, to the numerous other acts concerning which she testified. The authorities invoked to support the defendant's argument are cases where the crime was charged to have been committed with force and against the will of the victim. The relationship obtaining between the defendant and Betty Marshall began in June, 1935, and terminated three months later only when the defendant's disgraceful conduct resulted in her father discovering the situation. The defendant admitted that on this occasion he ran away unclad; that his wife brought his wearing apparel to him in the street, and that Betty even then desired to accompany him, informing not only him but also his wife (her aunt) that she loved him. Under these circumstances it would have been singularly strange for the prosecutrix to have made prompt complaint to her parents. Manifestly, proof of immediate complaint was not essential to a conviction in the present case. *People* v. *Findley, supra.*

56

The case was tried by the court without a jury. We do not feel that under the circumstances disclosed by the record we should substitute our judgment for that of the trial judge, who saw and heard the witnesses.

The defendant was accorded a fair trial and we find no reversible error in the record. The judgment will therefore be affirmed.

*Judgment affirmed.*