(No. 26957.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ALEX PETERS, Plaintiff in Error.

*Opinion filed March 18, 1943—Rehearing denied May 14, 1943.*

ARTHUR G. HARRIS, (OTTO W. BERG, of counsel,) for plaintiff in error.

GEORGE F. BARRETT, Attorney General, and MAX A. WESTON, State's Attorney, (WILLIAM H. GATES, of counsel,) for the People.

Mr. JUSTICE WILSON delivered the opinion of the court:

The defendant, Alex Peters, was indicted in the circuit court of Winnebago county for the crime of statutory rape alleged to have been committed on August 16, 1939, the prosecuting witness then being fifteen years of age. A motion to quash the indictment was overruled. Defendant had two jury trials. Upon the first, he was found guilty and sentenced to from one to ten years' imprisonment in the penitentiary. His motion for a new trial was allowed because of an error committed by the jury in fixing an indeterminate sentence. On the second trial, defendant was again convicted, as charged, and his punishment fixed at five years' imprisonment in the Illinois State Penitentiary. Peters prosecutes this writ of error for a review of the record upon the second trial.

The complaining witness was born February 6, 1924. According to the evidence, on August 15, 1939, about 9:00 A. M., defendant telephoned the Employment Service of Rockford, asking for a young girl capable of answering the telephone to assist him in his real-estate office for about half a day. In response to his call, the Employment Service sent Roberta Marsh. The prosecuting witness, a friend of Roberta, accompanied her to defendant's office, where they arrived between 12:00 o'clock noon and 1:00 P. M. Defendant's wife was present in the office. Both girls gave defendant their ages as eighteen, and prosecutrix testified that when he learned she was unmarried, he started talking to her "a lot." Defendant stated the position was already filled and took Roberta's telephone number, whereupon Roberta and prosecutrix departed. For some reason, unexplained, the complaining witness returned, alone, about 3:30 o'clock the same afternoon. Defendant then told her he would telephone if her services were required. About 8:00 o'clock the next morning, August 16, defendant telephoned the number furnished by Roberta Marsh. Roberta's mother summoned prosecutrix, who talked with defendant

and he requested her to come down immediately as he had some work for her. She testified that when she arrived about 9:00 o'clock, defendant was alone; that in answer to his inquiry she told him she could not typewrite, and asked him if $10 per week would be satisfactory; that defendant offered to show her how to typewrite, and agreed to pay her $10 weekly. She further testified he then ushered her to a typewriter, furnished a blank piece of paper, instructed her as to the operation of the machine, and returned to his desk; that after she had been at the typewriter about fifteen minutes he requested her to come to a room to the rear of his office, as he wanted to talk to her; that when she entered the room in obedience to his call, he closed the door, and that he thereupon had sexual intercourse with her. She testified that she left defendant's office immediately, arrived home in time to partake of the noon meal, and that, after assisting with the dishes, retired to her room, remaining in bed most of the afternoon; that she told her mother of the occurrence about 2:30 P. M. and informed her father when he arrived home at 4:30 P. M. or a little later. She further testified that she visited Dr. Leslie B. Sims with her father about 7:00 o'clock the same evening.

The mother of prosecuting witness testified that her daughter left home about 8:30 A. M. August 16, 1939, and returned about noon in an hysterical condition; that she was white, "kind of shaky," and crying, and that she told her she had been attacked. The father of prosecutrix testified that when he returned at 4:30 P. M. he saw his daughter lying in bed, crying and hysterical; that she informed him she had been ravished, and that he took her to Dr. Sims in the evening. He also corroborated her testimony as to her garments being torn. Dr. Sims, licensed to practice medicine since 1907, testified that he examined prosecutrix between 7:00 and 8:00 o'clock, August 16, 1939; that although there was no bleeding, evidence of bruising was

present. Dr. Sims expressed the opinion that there had been recent sexual intercourse. He also testified that this was the first time he had ever examined the complaining witness.

Defendant's office was located on the ground floor at 110 South Second street, in the business section of Rockford, on the east side of the street, facing west. A plate glass window extended across the front, at the north end of which was a glass door. The space in which defendant's desk was located was separated from a room to the rear by a seven-and-a-half-foot wooden partition, or wall. Access to the rear room, where complaining witness claims to have been ravished, was afforded by a glass-paneled door located in the center of this partition. Bessie Peters, defendant's wife, testified in minute detail as to the measurements and contents of the office and rear room. She further testified that she was in the office August 15; that she overheard defendant's conversation with Roberta Marsh and prosecutrix; that defendant informed the girls they had arrived too late; that he took Roberta's telephone number and promised to call when he needed someone, and that the reason for seeking an office girl on August 15, 1939, was that she and her husband desired to go to church. She further testified she was present when complaining witness returned later the same afternoon, stating it was about 1:30 P. M.; that defendant inquired if she had not visited his office earlier in the day, and that he told her he would call if he needed her services.

Defendant testified he was fifty-four years old, married since January 10, 1929, and in the real-estate business since 1925; that prior to 1925 he was a barber, and that his office was in the same building from 1913 to 1940. He described the office and its contents, and stated that the rear room was "just like day light." His testimony agrees substantially with that of the prosecuting witness as to events prior to the time when the attack is alleged to have

occurred. He denied asking for the prosecuting witness in his telephone call the morning of August 16, 1939, declaring that he asked for Roberta Marsh, but that about 9:30 A. M. prosecutrix came to his office. He testified that he inquired as to her education and that she replied she had gone through high school and could typewrite; that he told her to demonstrate her typing, and that when he saw the results of her work he stated to her, "Young lady, I can't use you," whereupon she departed. He categorically denied prosecutrix's testimony as to statements attributed to him before the alleged attack; that he or she ever went into the rear room, and that he ever had intercourse with her at any time. On cross-examination, defendant said he could not remember testifying on the former trial that the prosecuting witness told him she had gone only to eighth grade in school. Likewise, he could not recall that he had then testified he called the employment office and asked for a girl to answer the telephone, but maintained he had requested a girl who could typewrite. In other particulars, his testimony on cross-examination did not agree with that given upon the former trial, this conclusion being substantiated by the court reporter who testified from his notes. Defendant admitted that he talked with a Mrs. Patterson, but denied that he told her he would give her fifty dollars to testify against the character of prosecutrix.

In rebuttal, Hazel Patterson testified that defendant came to her home and asked her to testify against the prosecuting witness and her family with respect to their morals, and that he offered her fifty dollars. Her testimony was corroborated by Mary Dempsey who heard the conversation.

It is first contended that the trial court erred in overruling the motion to quash the indictment on the ground that an amendment of section 1 of the Jurors Act, effective July 1, 1939, (Ill. Rev. Stat. 1941, chap. 78, par. 1,) made it mandatory to include the names of women in the list

from which the grand jury was selected, and that failure so to do rendered the grand jury illegal. An indictment returned by the identical grand jury, which was certified by the board of supervisors of Winnebago county on August 1, 1939, from a duly certified list, was the subject of a motion to quash on substantially similar grounds in *People* v. *Fognini*, 374 Ill. 161. The validity of the indictment was upheld, notwithstanding the fact that no women were called. We decided that the lack of women on this first grand jury certified after the amendment showed nothing prejudicial to the defendants, and that, there being no showing of collusion, conspiracy or lack of good faith among the members of the board of supervisors at this particular meeting in August, 1939, to keep women off the grand jury, the defendants were not prejudiced by the proceedings. The motion to quash the indictment was properly denied.

Defendant strenuously contends that the evidence does not prove, beyond a reasonable doubt, that he is guilty of the charge preferred against him. To support his contention, certain portions of the evidence are scrutinized. In particular, it is urged that the testimony of the prosecuting witness is uncorroborated, and, hence, insufficient to sustain the conviction. He invokes the rule that where a conviction of rape depends upon the testimony of the prosecuting witness and the defendant denies the charge, the evidence of the prosecuting witness should be corroborated by some other fact or circumstance. (*People v. Kazmierczyk,* 357 Ill. 592.) It is equally well settled that testimony of a prosecutrix, uncorroborated by other witnesses, may be sufficient to justify a conviction if clear and convincing. (*People* v. *Burns,* 364 Ill. 49; *People* v. *Sciales,* 353 id. 169, and 345 id. 118; *People* v. *Andreanos,* 323 id. 34.) If the testimony as to whether or not the offense was committed is conflicting, it becomes the special province of the jury to ascertain which witness is telling the truth and to

determine the facts. (*People* v. *Drewell,* 348 Ill. 320; *People* v. *Hoffman,* 329 id. 278; *People* v. *Talbe,* 321 id. 80.) With respect to the commission of the crime charged in the indictment, there is the conflicting testimony of the prosecuting witness and the defendant. The jury evidently believed the former. Her testimony was reasonable, fair and probable, and is abundantly corroborated by the attendant facts and circumstances. Although defendant categorically denied having intercourse with prosecutrix and that she was ever in the room to the rear of his office, her description of the room and its contents sufficiently corresponded with that of defense witnesses.

Prosecutrix's complaint to her parents was in apt time, and not, as urged by defendant, too long delayed, and there is corroboration of the complaint by the doctor who examined her the same evening. None of the reasons advanced by defendant, including those as to the location and visibility of his office to passersby, prosecutrix's failure to return directly to her home from defendant's office nor the fact that she failed to inform her future husband or her cousin, both of whom she testified she met on her way home, render her narration of the events so improbable as to entirely discredit her testimony. December 30, 1939, four months after the happening of the event charged in the indictment, she gave her age at the marriage-license bureau as eighteen. Her admissions that she falsified her age on three occasions, namely, to an employment interviewer, to defendant when in quest of a position, and to a license clerk prior to her marriage, merely affected her credibility.

Two juries have found defendant guilty. The second verdict is amply supported by the evidence. Accordingly, the judgment of the circuit court is affirmed.

*Judgment affirmed.*