Scott PATTERSON, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Charles SPOON, Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

Nos. 83–261, 84–13.

Supreme Court of Wyoming.

Nov. 29, 1984.

Rehearing and Motion for Stay
Denied Jan. 8, 1985.

**254**

Sylvia Lee Hackl, Appellate Counsel, State Public Defender, Cheyenne, Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Barbara L. Lauer, Student Intern, Laramie, for appellants.

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., Patrick Day, Legal Intern, Cheyenne, for appellee.

Before ROONEY, C.J., and THOMAS, ROSE, BROWN and CARDINE, JJ.

ROONEY, Chief Justice.

Appellants appeal from judgments and sentences rendered on a jury verdict finding appellant Patterson guilty of possession of a controlled substance (marijuana) with intent to deliver the same, and finding appellant Spoon guilty of delivery of a controlled substance (marijuana), both in violation of §§ 35–7–1014(d)(x) and 35–7–1031(a)(ii), W.S.1977.

Appellants present three issues on appeal:

1. Did the court err in refusing to excuse a juror for cause on motions of the prosecution and of both appellants?

2. Did the court err in denying appellants' motions to suppress evidence?

3. Did the court err in denying appellant Patterson's motion for judgment of acquittal?

■ Inasmuch as we find error, under the particular facts of this case, in the trial court's refusal to excuse a juror for cause, we reverse and remand for a new trial. Although not dispositive of this case, we find no error with reference to the other two issues, and we address these issues only because they are bound to arise in connection with the new trial.

"* * * It is proper for the supreme court to decide incidental questions which are bound to arise again in the case. * * *" *Rocky Mountain Oil and Gas Association v. State*, Wyo., 645 P.2d 1163, 1167 (1982).

## CHALLENGE FOR CAUSE

The simple deciding factor in this case is the existence of bias or prejudice on the part of juror Taylor as reflected in his answers to questions addressed to him on voir dire. Section 7–11–105, W.S.1977, provides in pertinent part:

"(a) The following shall be good cause for challenge to any person called as a juror on any indictment:

*    *    *    *    *    *

"(ii) That he * * * is biased or prejudiced for or against the accused."

Juror Taylor's answers in this respect were contradictory and ambiguous. To determine evidence of bias or prejudice, the answers must be examined as a whole without undue emphasis on any one portion of them. The following answers do indicate such bias or prejudice:

1. On inquiry by the State:

"I would like to state my views about use of marijuana. I don't think the laws are strict enough, I think the court system is far too lenient in their sentencing. I don't feel that I could be impartial in my verdict."

"No I don't think [I could be impartial] if it comes down to whether it was close to whether he was innocent or not guilty, I think I would lean to vote guilty."

"* * * if I feel it is clearly innocent, I would vote innocent, but if I think a slight shadow of doubt I think I would vote guilty."

"I don't think so." (That I ought to serve on this jury panel).

"I think so." (That it would be in the interests of justice that I be excused because of my strongly held feelings).

2. On inquiry by appellant Patterson:

"* * * a little bit of evidence that said innocent and a little more said guilty, I would vote guilty."

"I don't think so." (That I could be a fair and impartial juror).

"No." (I would not want a juror in my frame of mind sitting as a juror if I were the defendant).

3. On inquiry by appellant Spoon:

"I would have a tendency not to believe them." (If they used drugs).

"Yes, I would." (Intrinsically favor the non-drug users even if the judge would give me certain rules of law to apply to certain factual situations that will be presented).

"It might." (Such favoring of non-drug users might interfere with my ability to apply the law as given to me in this case and with my ability to be fair and impartial).

The following indicates the lack of such bias and prejudice:

1. After the State's inquiry and after challenge by the State, in which both appellants joined:

"THE COURT: Mr. Taylor, the critical issue is whether you could decide this case based upon the evidence and instructions upon the law here. Could you base your decision on that?

"MR. TAYLOR: I could listen to the evidence, and based on the evidence, but I think to where I vote not guilty or

innocent or not guilty, I think if there was the slightest question in my mind, that he was guilty, I think I would vote guilty.

"THE COURT: I am not asking you that. I am asking you if you could follow the law as given to you in the instructions?

"MR. TAYLOR: Yes, could do that. ·

"THE COURT: And you would base your decision based upon that and the evidence here in the case?

"MR. TAYLOR: Yes."

2. During inquiry by appellant Patterson:

Answered "no" to question as to whether or not he had any problem with the "premise of law" requiring the burden "upon the prosecution to prove the defendant guilty beyond a reasonable doubt."

3. After challenge by appellant Patterson:

"THE COURT: Mr. Taylor, you earlier indicated you would decide the case based solely upon the law and the evidence here in court, what would be unfair or lacking in impartiality in that case?

"MR. TAYLOR: Well, I already have strong feelings about marijuana, and I think that has to, you know, have something to do with the way I think, make decisions.

"THE COURT: Well, it is still your position though you would decide the case based solely upon the evidence?

"MR. TAYLOR: Upon the facts, yes, sir."

■ The contradictions are obvious. The juror will decide the case on a preponderance of the evidence rather than on the lack of reasonable doubt, but he will decide the case under the instructions which will direct to the contrary. The last quotation, supra, reflects a change by the juror in the court's question relative to reliance solely on the evidence. His answer expanded "evidence" to "facts." Perhaps he meant facts presented in the case, but perhaps he meant more. The juror steadfastly main-

tained his prejudice against those involved in marijuana, even to the extent of asserting that such would make him partial and a juror whom he would not want to decide a case in which he was a defendant. Yet he agreed to act only on the evidence and according to the instructions.

Ordinarily, we defer to the action of the trial court in connection with jury selection. *Parks v. State*, Wyo., 600 P.2d 1053 (1979); *Loy v. State*, 26 Wyo. 381, 185 P. 796 (1919); *Reynolds v. United States*, 98 U.S. 145, 8 Otto 145, 25 L.Ed. 244 (1879). *In this instance*, however, the bias or prejudice of juror Taylor was definitely evidenced. There is no indication that he realized that the instructions would require proof beyond a reasonable doubt by the prosecution for conviction instead of his avowed intention to apply the standard of preponderance of the evidence. His stated position left nothing to speculation. It established the *fact* that he would use a preponderance of the evidence standard, and the court's questions relative to following instructions were not sufficiently specific to establish a disposition on the part of the juror to do other than his stated intention. The error is manifest. Although it is not controlling, it is of note that all parties, including the prosecution, challenged juror Taylor for cause.

■ Nor *in this instance* was the denial of the challenge for cause a harmless error. Appellants objected to the ruling, did not accept the jury because of it, exhausted their peremptory challenges, and designated the juror against whom they would have exercised the peremptory challenge necessarily used against juror Taylor. *Parks v. State*, supra.

The court's refusal to grant the challenge of juror Taylor for cause in effect reduced the allowable peremptory challenges of the parties. Rule 25(b), W.R. Cr.P., provides in pertinent part:

"(b) *Peremptory challenges.*—In every case, * * * the state shall be entitled to the aggregate number of peremptory challenges to which the defendant or defendants are entitled. * * * If the of-

fense charged is punishable by imprisonment for more than one (1) year, each defendant shall be entitled to 8 peremptory challenges. * * * "

■ Appellants were "entitled to" sixteen peremptory challenges over and above their unlimited number of challenges for cause. They were improperly forced to use a peremptory challenge in lieu of a challenge for cause.

## MOTION TO SUPPRESS EVIDENCE

Appellants' motions to suppress certain physical evidence seized at the time of their arrest were denied, and their objections at the trial to the introduction of such evidence were overruled. The record reflects the following:

On May 6, 1983, officers of the Casper Police Department initiated an undercover drug operation. Officer Lee Strope was wired with a hidden transmitter, and he proceeded to the Wonder Bar in Casper, where an informant had indicated he could meet some men who would sell him marijuana. Officer Burgen followed Strope in one car, while Officers Bachert and Anderson followed in another, listening to broadcasts over the transmitter which was wired to Strope.

Officer Strope contacted John Eshelman and Ken Brooks at the Wonder Bar. They were unable to sell him any marijuana, but they knew a dealer who might have some. They called the dealer, but he was unavailable. Anxious to help Officer Strope, Brooks and Eshelman accompanied him in his car to the home of Fred Daniels, a man whom they believed would have some marijuana. Daniels did not have any marijuana either, but he knew a dealer he felt could supply them with marijuana, so Daniels joined Eshelman, Brooks and Strope in Strope's car.

Followed by Officers Burgen, Bachert and Anderson, Strope drove to the Homax Oil parking lot at Daniels' direction. Homax Oil was located next to a trailer park. Strope gave Daniels a hundred dollar bill, the serial number of which the officers had previously recorded.

Daniels left the car and walked up a drive into the trailer park. Officers Burgen, Bachert and Anderson had positioned their cars so that they could observe Daniels as he walked up the drive and into a trailer at 429 Pleasant Drive. Daniels was in the trailer for a short time, after which he was observed leaving the trailer. As Daniels returned to the car, Officer Strope could see the bulge in Daniels' pocket, which contained marijuana purchased inside the trailer. Daniels handed Officer Strope the marijuana he had purchased in the trailer and thirty dollars change which he had received when he used the hundred dollar bill to purchase the marijuana in the trailer. At this point, Officers Burgen, Bachert and Anderson moved in and arrested Daniels, Brooks and Eshelman. Daniels was searched; the pre-recorded hundred dollar bill was not on him.

While observing Daniels enter the trailer, Officer Burgen noticed that there were many cars parked around the trailer. One of the cars was blue, with an antenna on the back. While the officers were in the process of arresting Daniels, Brooks and Eshelman, the blue car which had been parked at the trailer drove by. It contained three people. While they were arresting Daniels, Daniels informed the officers that while he was in the trailer he heard the occupants discussing a cocaine deal that was about to occur.

Given the traffic leaving the trailer, the imminent cocaine deal, the possibility that the occupants of the blue car had seen the arrest, and the fact that the pre-recorded hundred dollar bill was in the trailer, the officers decided that immediate action was necessary. Officers Anderson, Bachert, Burgen and Strope approached the trailer. The door was ajar, so Officer Anderson pushed it open and the police entered, announcing their presence. Six people were in the trailer, sitting in the living room. Marijuana was immediately seen by the officers, marijuana odor was in the air, and a lit marijuana cigarette was present next to a woman seated beside Charles Spoon.

The officers then asked everyone to produce identification, and the wallets were checked for the presence of hundred dollar bills. Charles Spoon's wallet was the only one which contained a hundred dollar bill. His was kept and the others were returned. Charles Spoon was seen trying to hide a baggie of marijuana which was at his feet. The officers made a quick, cursory sweep of the trailer to determine if anyone else was present. When nobody else was found, Officers Burgen and Anderson left to procure a search warrant. Officers Bachert and Strope stayed at the trailer. Upon return with a warrant, Officer Anderson announced that he had a warrant and was going to read everybody their *Miranda* rights. Before he could do so, Scott Patterson blurted out that "all of the marijuana in my house is mine, and I take full responsibility for it." Patterson and Spoon were then arrested and the trailer was thoroughly searched. The search uncovered, among other things, several bags of marijuana seeds, one large bag of marijuana, a small bag of marijuana, an extremely delicate scale, baggies, roaches, a bong and other paraphernalia and trays of marijuana.

Appellants argue that this physical evidence should have been suppressed for the reason that the warrantless entry into the trailer and the arrests were violative of defendants' constitutional rights and that the search warrant was therefore defective.

■ The general rule prohibits search of a person's home without a warrant. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980).

"The basic underpinning of any search and seizure question, is that warrantless searches are assumed to be unreasonable per se, *Tobin v. State*, 36 Wyo. 368, 255 P. 788 (1927); *State v. George*, 32 Wyo. 223, 231 P. 683 (1924), and the burden is on the State to justify any search conducted in the absence of a warrant by convincing this court that one of the well-delineated exceptions to the rule is applicable. * * * " (Footnote omitted.)

*Stamper v. State*, Wyo., 662 P.2d 82, 86 (1983).

See *Ortega v. State*, Wyo., 669 P.2d 935 (1983); and *Jessee v. State*, Wyo., 640 P.2d 56, reh. denied 643 P.2d 681 (1982).

■ By denying the motion in limine, the trial court found that the State had met its burden to establish "well-delineated exceptions" to the rule that a warrantless search is improper, to-wit, exigent circumstances and good faith. We uphold the ruling of the trial court on a motion to suppress when specific findings are not made "if it is supportable by any reasonable view of the evidence." *Neilson v. State*, Wyo., 599 P.2d 1326, 1330 (1979), cert. denied 444 U.S. 1079, 100 S.Ct. 1031, 62 L.Ed.2d 763 (1980).

■ The existence of exigent circumstances is dependent upon all of the facts or circumstances viewed in their entirety. If such facts reflect the danger of destruction of valuable evidence, exigent circumstances are present. *Jessee v. State*, supra; *Ortega v. State*, supra. In this instance, the officers knew that an occupant, or occupants, of the trailer was, or were, in the business of selling and delivering marijuana, that he, or they, had possession of a hundred dollar bill which would evidence and confirm a recent sale and delivery of marijuana, that the number of automobiles near the trailer could indicate the presence of several people in the trailer, that an automobile with passengers came from the trailer and passed them when they were taking Daniels, Brooks and Eshelman into custody, that these passengers had the potential to advise the occupants of the trailer of the officers' presence and activities, and that such knowledge could result in the destruction of the hundred dollar bill and of contraband before a warrant could be obtained. Taken as a whole, the circumstances were exigent. There was a distinct danger of destruction of valuable evidence. *Cupp v. Murphy*, 412 U.S. 291, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973); *Jessee v. State*, supra. The trial court correctly found that there was probable cause for the warrantless search. The denial of the motion in limine was proper. It is noted

that evidence was not seized until after the issuance of a search warrant. The police actions prior thereto were for the sole purpose of securing the premises to avoid destruction of evidence.

■ Appellants argue that the search and seizure were in violation of the Fourth Amendment to the Constitution of the United States.[1] Subsequent to the briefs and arguments in this case, the United States Supreme Court specifically ruled that the exclusionary rule was *non*-constitutional in origin and exists only to deter unlawful police conduct. *United States v. Leon,* —— U.S. ——, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). It held that the exclusionary rule was not a necessary corollary of the Fourth Amendment but is instead a judicially created remedy designed to protect Fourth Amendment rights generally through its deterrent effect; that in gauging its deterrent effect, the exclusion question "must be resolved by weighing the costs and benefits;" that the exclusionary rule exacts "substantial social costs;" that the truth-finding functions of judges and juries are impeded by the exclusionary rule and some guilty defendants may go free or receive reduced sentences due to plea bargains; that indiscriminate application of the exclusionary rule may generate disrespect for the administration of justice; and that the rule should be applied only where its remedial objectives are best served. *Id.* 104 S.Ct. at 3412, 3413.

"* * * Particularly when law enforcement officers have acted in objective good faith or their transgressions have been minor, the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system. * * *" *United States v. Leon,* supra, 104 S.Ct. at 3413.

In a companion case to *United States v. Leon,* the United States Supreme Court again applied the good faith exception to the exclusionary rule in finding that the police action was reasonable. *Massachusetts v. Sheppard,* —— U.S. ——, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

■ Both cases involved a search made pursuant to a defective warrant, but the rationale and conclusions are particularly applicable to this case. The officers had a reasonable purpose in securing the premises to prevent destruction of evidence. They did not have an opportunity to obtain a search warrant before the potential for such destruction became manifest. They acted in objective good faith, and if there was any transgression it was minor. If they had waited for a search warrant and if the evidence were not destroyed, the result would have been the same.

*Segura v. United States,* —— U.S. ——, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), is a third companion case to *United States v. Leon* and *Massachusetts v. Sheppard,* supra. In it, the Court held that even if an initial entry were illegal, the evidence should not be excluded if the connection between it and the discovery and seizure of it is " 'so attenuated as to dissipate the taint.' " It is not excluded, for example, "if police had an 'independent source' for discovery of the evidence." *Id.* 104 S.Ct. at 3386. Defendant had been arrested in the lobby of his apartment house after the arresting agents had received information from another person that he had purchased cocaine from defendant. They took defendant to his apartment and made a security check of it, observing drug paraphernalia as they did so. Due to the "administrative delay," a search warrant was not issued until some nineteen hours after the entry. The agents waited in the apartment and searched it after the warrant was obtained. The district court granted the motion to suppress all of the seized evidence. The court of appeals reversed the district court as to evidence discovered after issuance of

---

1. Amendment IV to the Constitution of the United States provides:

   "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

the search warrant. The Supreme Court agreed.

The exigent circumstances occasioned by the potential for destruction of evidence coupled with the good faith actions of the officers bring this case definitely within the exceptions of the exclusionary rule.

## DENIAL OF MOTION FOR JUDGMENT OF ACQUITTAL

■ Appellant Patterson argues that there was insufficient evidence of his intent to deliver the controlled substance found in his possession to allow the charge to go to the jury, intent to deliver (not actual delivery) being one of the elements of the charge. He recognizes that we view the evidence most favorable to the State together with all logical and reasonable inferences to be drawn therefrom in reviewing the trial court's ruling on denial of a motion for judgment of acquittal. *Chavez v. State*, Wyo., 601 P.2d 166 (1979); *Russell v. State*, Wyo., 583 P.2d 690 (1978). If there was substantial evidence to sustain the material elements of the offense charged, the motion was properly denied. *Russell v. State*, supra.

■ The following substantial evidence was sufficient to allow a jury to reasonably conclude the intent on the part of appellant Patterson to deliver controlled substances: The physical evidence found in Patterson's trailer, consisting of marijuana cigarettes, narcotics, paraphernalia, baggies similar to that brought from the trailer by Daniels, a delicate scale, zip-lock and other bags containing marijuana and marijuana seeds, a tin canister containing marijuana seeds, a white envelope marked "Sinsemilla, $120 an ounce," another envelope marked "Columbian Gold 'gold' $60 oz.," rolling papers and a fine screen; testimony that Daniels knew where he could buy marijuana and the fact that he went straight to Patterson's trailer to do so; and Daniels' testimony that he had purchased marijuana from Patterson several times before.

The trial court properly overruled Patterson's motions.

Reversed and remanded for a new trial.

ROSE, Justice, specially concurring in the result only.

### Preface

I concur in the result reached by the majority, but I deeply regret that this court has missed a golden opportunity to advise with Wyoming's bench and bar about the Wyoming judicial system's disintegrating voir-dire process. I abhore the tendency of trial courts—both state and federal—to refuse to furnish lawyers the opportunity to inquire of venirepersons in such a meaningful way as will permit intelligent decisions to be made about bias and prejudice. The litigants' right to be heard by fair and impartial jurors is a guaranteed right—guaranteed by constitution, rule and decision—yet the tendency in this state is for judges to pretend that a question addressed to the venireperson which asks:

Do you believe you can serve as a fair and impartial juror in this case?

is sufficient to discharge the fair-and-impartial-jury requirements of the law. This really is judicial sophistry. An answer to this question reveals absolutely nothing about the bias and prejudice which the potential juror may or may not harbor with respect to those matters with which the trial will be concerned.

The majority opinion in this appeal simply rejects this unique opportunity to address this important issue, but I cannot forego what I perceive to be my obligation to speak out. In my discharge of this obligation, I speak with sincerity and without criticism but with the high hope that judges and lawyers who are concerned with the voir-dire process in our courts will rethink their obligation to insure that Wyoming's jury trials are conducted in the presence of such jurors as are contemplated by law—that is, such jurors as are as fair and impartial as the system can possibly produce.

Had I been writing for the majority, the following would have been my proffered opinion.

## Nature of the Case

Appellant Patterson was convicted of possession with intent to deliver marijuana, and appellant Spoon was convicted of delivery of marijuana, all in violation of the statutes of the State of Wyoming. The arrests and convictions arose from the same incident, and their trials and appeals were consolidated. Appellants urge that the district court erroneously refused to excuse a juror for cause, thereby necessitating the exercise of a peremptory challenge, the consequence of which was to deny them a fair trial.

## FACTS

During the voir-dire examination of prospective jurors by the prosecutor, one member of the panel volunteered that he would be unable to render a fair and impartial decision because of his views against the use of marijuana. In response to questioning by the State and defense attorneys, this venireman repeated his concern to the effect that his strong feelings would influence his decisions in the case. Both defendants, as well as the State, moved that the panel member be excused for cause. The court denied these motions, and the defendants were thus forced to exercise one of their peremptory challenges to remove the juror. Before the full panel of jurors had been seated, the defendants had exhausted all of their authorized peremptory challenges. In a conference at the bench, the defendants timely objected to the jury on the ground that they would have peremptorily excused the last-called juror had it not been necessary to utilize one of their peremptory challenges for the purpose of striking the juror which the court had refused to excuse for cause. The court overruled the defendants' objection.

1. Black's Law Dictionary, 5th Ed.

## THE ISSUE FOR DECISION

The determinative issue presented on appeal is whether or not the district court committed reversible error in refusing to dismiss the juror for cause.

## DECISION

### Introduction

It is upon the delicate inquiry process called voir dire that the American jury system rests, because it is through this procedure that impartial jurors are disclosed and fair trials are insured. Voir dire means "to speak the truth," [1] and the American jury voir dire has evolved as that intricate process where courts and trial lawyers inquire and communicate delicately and often personally with citizens who are called for jury duty in order that the trial's truth-seeking exercise can proceed and the bias and prejudice which we all have may be revealed and examined.

Justice Benjamin Cardozo, in *The Nature of the Judicial Process* (1921), wrote about the subconscious forces that cause judges to do what they do and be what they are. The Justice observes that these forces are present in all of us—those who are not trained in the law, as well as we who are. He wrote that

> " * * * every one of us has in truth an underlying philosophy of life, even those to whom the names and the notions of philosophy are unknown or anathema. There is in each of us a stream of tendency, whether you choose to call it philosophy or not, which gives coherence and direction to thought and action."

And so it is with our utilization of the delicate and tender art of voir dire. It is each venireperson's "stream of tendency" that must be explored in order that there be revealed and identified the conscious or subconscious philosophy of life of each candidate for the high office of jury duty in the American judicial system. The inquiry does not seek to pry or embarrass. Its purpose is to strip away the defensive veneer that hides and shields the respon-

dent's underlying motivating attitudes so that the presence or absence of his or her bias and prejudice will be disclosed for purposes of discovering whether or not—if they be present—they are so deeply ingrained and prejudicial as to foreclose jury service within the fairness concepts which are demanded by the particular trial with which the system, at any given moment, is concerned.

Cardozo, in *The Nature of the Judicial Process*, goes on to point out that all of us, whether judges, lawyers or laypersons, are formulated by forces that we do not recognize—and cannot name—

> " * * * inherited instincts, traditional beliefs, acquired convictions; and the resultant is an outlook on life, a conception of social needs, a sense in James' [2] phrase of 'the total push and pressure of the cosmos,' which, when reasons are nicely balanced, must determine where choice shall fall."

The Justice concludes:

> " * * * In this mental background every problem finds its setting. We may try to see things as objectively as we please. None the less, we can never see them with any eyes except our own. To that test they are all brought—a form of pleading or an act of parliament, the wrongs of paupers or the rights of princes, a village ordinance or a nation's charter,"—

and, I would add, the venireperson's perception of his or her own bias or prejudice. These are the secret places—where "streams of tendencies" flow—the secret places where the court's officer who conducts voir dire must visit because it is only through such delicate exploration that the fair and impartial juror will be revealed.

It is, then, the duty of those officers of our courts who conduct voir dire—lawyers and judges alike—to fine-tune their communication skills in a way which will permit them to interact with the representations and protestations of venirepersons so that the fair and impartial jury that courts, lawyers and lay-people write and dream about will continue to inhabit the jury boxes of this state and nation.

The voir-dire search for the fair and impartial juror is so precious to the American fair-trial concept that innumerable statutes, decisions and court rules have been assigned to the guarantee and protection of the process. The federal Constitution and Wyoming's Constitution promise the accused in a criminal proceeding a trial by an impartial jury.[3] So that the jury-trial promise of the fair-trial guarantee will be kept, this court has adopted a rule [4] authorizing voir-dire examination so that the potential juror who is unable to serve fairly and with impartiality according to the facts of the case and the instructions of the court, may be excused for cause,[5] and so that litigants, for any undisclosed reason whatsoever, may intelligently exercise their peremptory challenges under the authority of Rule 25(b), W.R.Cr.P.

In this appeal, since we will reverse the district court for having deprived the citizens-accused of their fair and impartial jury-trial rights, I would have examined the jury-selection process as contemplated by constitution, statute, rule and court decision—from voir dire to the seating of the jury—so that our trial courts might more surely preside over such fair trials as are guaranteed by an acceptable jury-selection proceeding.

### The Fair and Impartial Juror

The Sixth Amendment to the Constitution of the United States and Art. 1, § 10

2. William James, from his lectures on Pragmatism.

3. The Sixth Amendment to the United States Constitution and Art. 1, § 10 of the Wyoming Constitution insure litigants an impartial jury, the Fifth and Fourteenth Amendments to the United States Constitution and the due-process clauses of this state's Constitution have come to be regarded as additional fair-trial protections through the guarantee of impartial juries. Discussion infra.

4. Rule 25, W.R.Cr.P. is discussed infra.

5. Section 7-11-105(a)(ii), W.S.1977 and Rule 25(b), W.R.Cr.P. are discussed infra.

of the Wyoming Constitution guarantee the accused in a criminal proceeding a trial by an impartial jury. Still another constitutional jury-trial guarantee contemplates that no person shall be deprived of liberty without due process of law, Fifth and Fourteenth Amendments, United States Constitution, and Art. 1, § 6, Wyoming Constitution. The Supreme Court of the United States has consistently held that a fair trial is a requirement of due process and that an impartial jury is a requirement of fair trial. *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961); *Murphy v. State of Florida*, 421 U.S. 794, 799, 95 S.Ct. 2031, 2035, 44 L.Ed.2d 589 (1975), citing *Irvin v. Dowd*, supra. This court echoed that standard in *Collins v. State*, Wyo., 589 P.2d 1283, 1289 (1979). Additionally, this court has said that:

"* * * The essential elements of a trial by jury are that there be *impartial jurors*, who unanimously decide the facts in controversy under the direction of a judge." (Emphasis added.) *Lapp v. City of Worland*, Wyo., 612 P.2d 868, 873 (1980), citing *People v. Schoos*, 399 Ill. 527, 78 N.E.2d 245, 2 A.L.R.2d 1096 (1948).

We have held that the parties to litigation to whom a jury trial is available have a right to a fair and impartial jury. See *State v. Bolln*, 10 Wyo. 439, 70 P. 1 (1902). The constitutional standard for fairness (Art. 1, § 10) "requires that the defendant have a panel of impartial jurors." *Collins v. State*, supra, 589 P.2d at 1289. Not only is it fundamental that "every litigant is entitled to have his rights fairly and impartially determined," but "it is the duty of a trial court to see that a jury of competent, fair and impartial persons is impaneled." *Redwine v. Fitzhugh*, 78 Wyo. 407, 329 P.2d 257, 260, 72 A.L.R.2d 664, reh. denied 78 Wyo. 426, 330 P.2d 112 (1958). In *Lopez v. State*, Wyo., 544 P.2d 855, 859–860 (1976), Justice Thomas, writing for the court, said:

"The appellants' contention is founded upon constitutional mandates. The Sixth Amendment to the Constitution of the United States guarantees to the accused in all criminal prosecutions a '* * * public trial by an impartial jury * * *.' Art. I, § 10, Wyoming Constitution, provides in that regard as follows:

"'In all criminal prosecutions the accused shall have the right * * * to a speedy trial by an impartial jury * *.'

"This Court does not question the fundamental principle that parties to any action are entitled to a fair and impartial jury. *Vivion v. Brittain*, Wyo., 510 P.2d 21 (1973); and *Redwine v. Fitzhugh*, 78 Wyo. 407, 329 P.2d 257, 72 A.L.R.2d 664 (1958), reh. den. 78 Wyo. 426, 330 P.2d 112 (1958)."

We said in *Vivion v. Brittain*, Wyo., 510 P.2d 21, 24 (1973) that the method of determining if a juror is qualified and can reasonably be expected to be fair and impartial is through voir dire. In *Lopez v. State*, supra, we identified the purpose of voir dire when we said:

"* * * The purpose of this voir dire examination is to raise alleged bias 'from the realm of speculation to the realm of fact.' *Dennis v. United States*, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950). It is designed to explore the possible grounds for challenges for cause under our statutes." 544 P.2d at 860.

See also *Hopkinson v. State*, Wyo., 632 P.2d 79, 111 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), where we said:

"* * * The purpose of voir dire is to inquire of the jurors as to their prejudices and biases which would interfere with their ability to decide the case fairly."

In order to attain the purpose which we identified in *Lopez v. State*, supra, *Hopkinson v. State*, supra, and the other opinions cited above, it is necessary that a litigant, his attorney and the court be allowed to develop such facts and disclose such legal principles as are necessary to permit the reaching of an informed conclusion with respect to a prospective juror's bias and prejudice and, thus, his or her ability to

serve. This is necessary not only so that an intelligent challenge for cause may be lodged, but also for the purpose of permitting the informed exercise of a preemptive challenge, *State v. Brown*, Mo., 547 S.W.2d 797 (1977), discussed infra. It is only through exploring the venireperson's "nuances of conscience," 47 Am.Jur.2d, Jury § 195, p. 786, through the development of such informed communication as will permit the disclosure of the deeper realities of the intended juror's inner self— that the "impartial" jury contemplated by the constitutions, the rules, the statutes, and the court decisions will have been made available to the judicial process. *State v. Brown*, supra; 47 Am.Jur.2d, Jury § 195, supra.

In *State v. Brown*, supra, the Missouri Supreme Court said:

"The constitutional right to a trial by jury would be a mockery of justice if it did not guarantee a jury with open minds, freely able to follow the law as declared by the trial court. *Faught v. St. Louis-San Francisco Ry. Co.*, 325 S.W.2d 776[1] (Mo.1959). Deeply ingrained in Missouri law lies the principle that 'a liberal latitude is allowed in the examination of jurors on their voir dire ... The purpose of the examination by defendant of the panel on their voir dire is to develop, not only facts which might form the basis of a challenge for cause, but also such facts as might be useful to him in intelligently determining his peremptory challenges.' *State v. Granberry*, 484 S.W.2d 295[4, 5] (Mo. bank 1972), citing a series of cases going back to the oft-cited case of *State v. Mann*, 83 Mo. 589 (1884). Specifically, a defendant has the right to discover whether prospective jurors have fixed opinions against applying the court-declared law of self-defense. Compare *State v. Lassieur*, 242 S.W. 900[2] (Mo.1922); *State v. Dill*, 282 S.W.2d 456[7–9] (Mo.1955)." 547 S.W.2d at 799.

The black-letter rule of the American Bar Association "Standards Relating to Trial by Jury" says of voir-dire examination:

"A voir dire examination should be conducted for the purpose of discovering bases for challenge for cause and for the purpose of gaining knowledge to enable an intelligent exercise of peremptory challenges."

It is said in 47 Am.Jur.2d, Jury § 195, p. 786:

" * * * It has been said that the ultimate function of voir dire is to explore the nuances of conscience to determine whether a prospective juror is able to participate fairly in the deliberations on the issue of guilt, confining his judgment to the facts as presented, and that the overall purpose of voir dire examination of jurors is to determine the real state of their minds so that a fair and impartial jury can be chosen."

In order that a fair and impartial jury may be seated in all trials where juries will serve as fact-finders, this court has adopted Rule 25(a), W.R.Cr.P.,[6] which provides for the voir-dire examination of prospective jurors. If voir dire reveals that a prospective juror is prejudiced, he or she may be dismissed for cause pursuant to § 7–11–105(a)(ii), W.S.1977, which provides that:

"(a) The following shall be good cause for challenge to any person called as a juror on any indictment:

* * * * * *

"(ii) That he has formed or expressed an opinion as to the guilt or innocence of the accused, or is biased or prejudiced for or against the accused * * *."

In addition to the litigant's statutory right to challenge a juror for cause through the voir-dire process, he or she may exercise peremptory challenges under Rule 25(b), W.R.Cr.P., which provides in relevant part:

---

6. Rule 25(a), W.R.Cr.P., provides:
"The parties, or their attorneys, may conduct the examination of prospective jurors, but such examination shall be under the supervision and control of the court, and the court may itself conduct such further examination as it deems proper."

*"Peremptory challenges.—*In every case * * * [i]f the offense charged is punishable by imprisonment for more than one (1) year, each defendant shall be entitled to 8 peremptory challenges."

This last-mentioned provision stands in recognition of the proposition that bias and/or prejudice may exist which manifests itself in a way which will not meet the statutory requirements of a challenge for cause, or, even if it does, the refusal of the court to remove the venireperson does not constitute reversible error at law. Even so, counsel, without leave of court and for whatever reason, may nevertheless challenge a potential juror when he or she even suspects such bias or prejudice is present.

As Justice Cardine of this court said in his dissenting opinion in *Jahnke v. State,* Wyo., 682 P.2d 991, 1047 (1984):

"Common sense tells us that peremptory challenges were intended to provide an additional safeguard to the required fair trial. They cannot be exercised in a vacuum or by guess and conjecture and accomplish this purpose. The litigants, therefore, should have as full knowledge as possible of prospective jurors to permit an intelligent decision in the selection process."

The Supreme Court of West Virginia has said that the purpose of voir dire is:

" * * * to assure that the defendant's right to a jury free of interest, bias or prejudice is protected * * *. Voir dire works to protect that right not only by providing the basis for challenges for cause but also by providing a basis to 'enable a litigant and his counsel to exercise reasonable judgment in utilizing peremptory challenges.' *State v. Pendry,* [159 W.Va. 738], 227 S.E.2d 210 (1976)." *State v. Peacher,* W.Va., 280 S.E.2d 559, 569–570 (1981).

Courts have held it to be an improper imposition upon the right to a fair trial where the trial judge restricts voir dire in a way which precludes the litigant, the court and counsel from intelligently concluding whether or not a juror possesses such bias or prejudice as will preclude him or her

from serving as a fair and impartial juror. In *State v. Brown,* supra, 547 S.W.2d at 800, where defense counsel informed the court that he intended to ask the venirepersons if they could follow an instruction to the effect that it is the State's burden of disproving self-defense and the court refused on the ground that the veniremen had responded affirmatively to the question which asks whether they could "follow the law," the Supreme Court of Missouri said:

" * * * [The] state's general question did not cover defendant's proposed inquiry about the critical issue of the state's burden to disprove self-defense.

" * * * [I]t is clear defense counsel made known to the trial court he wanted to learn if the veniremen's minds were open or closed to the principle that the burden of proof would be on the state to disprove self-defense. This was vital to the defendant's right to have an unbiased jury. The trial court erred in barring defendant from exercising this right."

The Supreme Court of Missouri was saying that the general question posed by court or counsel to a potential juror which asks whether or not he or she will follow the court's instructions on the law is not such an inquiry into the nooks and crannies of the venireperson's conscience as will permit either the potential juror, the court or counsel to know whether or not the respondent can serve as a fair and impartial juror as regards the particular facts or the particular law of a given case. Jurors will not ordinarily say that they will *not* follow the law. We all want to be perceived as a person who will do that—especially when being asked that question by a judge or an attorney in an unfamiliar and frightening courtroom filled with strangers, and particularly is this so in circumstances where the respondent does not have knowledge of the background facts or the underlying propositions of law with respect to which inquiry is being made. The search for the fair and impartial juror will not be rewarded where inquiry is so restricted. The channels of human communication must be encouraged to remain open in order that all concerned

may enjoy such an exchange of thought and feeling as will in fact reveal whether or not there exists in the "stream of tendency"[7] of the potential juror such bias or prejudice concerning the subject matter and law of the case as will either permit or prevent the rendering of the fair and just verdict which the law contemplates.

With these fundamental, background propositions in mind, I turn, then, to the facts and the law of this appeal to see how, when the voir-dire process had revealed such bias and prejudice as both sides of the litigation agreed should preclude jury service, the court went on to direct that the juror be seated anyway, and why this served to deny the defendant a fair trial.

Even a cursory reading of the voir-dire examination of the contested juror in this case establishes his strong bias against the defendants and the overwhelming probability that he would be unable to lay his prejudices aside in order to reach a fair and impartial verdict. Relevant portions of the examination of the juror are set out below, and especially revealing questions and answers have been emphasized.

"QUESTIONS BY MR. HRUBY [for the State]:

"Q. Good afternoon, Mr. Taylor. I am starting to feel like a broken record, not very comfortable position to be in. Have you heard all the questions I have asked the Jury?

"A. Yes.

"Q. You didn't have any difficult [sic] hearing any questions?

"A. No.

"Q. There will come a time when—

"A. *I would like to state my views about use of marijuana. I don't think the laws are strict enough, I think the court system is far too lenient in their sentencing. I don't feel that I could be impartial in my verdict.*

"Q. You cannot feel you could be impartial?

"A. No, I don't think if it comes down to whether it was close to whether he was innocent or not guilty, I think I would lean to vote guilty.

*       *       *       *       *       *

"Q. Seeing as how it is such a serious matter. *Do you think you can find it in your heart and mind to set aside your strongly held feelings and to give a guy a fair shake to be fair and impartial and open minded as you listen to the evidence, do you think you can find that within yourself?*

"A. *I don't think so.*

"Q. You don't think you can do it, if I were a defendant would I misplace my feelings if I were to say, there's a fair and impartial juror, would I be wrong in saying that?

"A. In some instances, I don't think so.

"Q. But in instances dealing with marijuana then I ought not to pick you as a juror?

"A. Well, that depends, if it comes, if I feel it is clearly innocent I would vote innocent, but if I think a slight shadow of doubt I think I would vote guilty.

*       *       *       *       *       *

"Q. Do you think you ought to serve on this jury panel?

"A. I don't think so.

"Q. You don't think so. Would you rather, *do you think it would be in the interests of justice if you were excused because of your strongly held feelings,* I guess, I will just ask you flat out without making any pretense.

"A. *I think so.*

"MR. HRUBY: Your Honor, I would move Mr. Taylor be discharged for cause, excused for cause, based upon the last half dozen answers to my questions.

"THE COURT: Do you wish to inquire, Mr. Murray?

"MR. MURRAY: No, Your Honor, no objection on behalf of Mr. Patterson.

"MR. RAYMOND: Same for Mr. Spoon, Your Honor, I would concur in the State's motion.

*       *       *       *       *       *

7. Cardozo, *The Nature of the Judicial Process,* supra.

"THE COURT: I will deny the motion.

\* \* \* \* \* \*

"QUESTIONS BY MR. MURRAY [for defendant Patterson]:

"Q. Good afternoon, Mr. Taylor, how are you?

"A. Pretty good.

"Q. It appears from the questions the prosecutor asked you have a little problem with our system of justice?

"A. Yes, I do.

\* \* \* \* \* \*

"Q. Well, do you think you can be a fair and impartial juror?

"A. I don't think so.

"Q. You don't think you can be fair and impartial, and *if you were the defendant would you want a juror in your frame of mind sitting as a juror?*

"A. *No.*

"Q. That is, no?

"A. No.

"MR. MURRAY: Your Honor, I would challenge for cause, Mr. Taylor has stated he can't be fair and impartial, the law requires the jurors to be fair and impartial at the outset.

"THE COURT: Mr. Taylor, you earlier indicated you would decide the case based solely upon the law and the evidence here in court, what would be unfair or lacking in impartiality in that case?

"MR. TAYLOR: Well, *I already have strong feelings about marijuana, and I think that has to, you know, have something to do with the way I think, make decisions.*

\* \* \* \* \* \*

"THE COURT: I will deny the motion.

\* \* \*

"QUESTIONS BY MR. RAYMOND [for defendant Spoon]:

\* \* \* \* \* \*

" \* \* \* [S]omeone who uses drugs, you won't believe, will you?

"A. If I knew they used drugs?

"Q. Yes.

"A. I would have a tendency not to believe them.

\* \* \* \* \* \*

"Q. \* \* \* [Y]our admitted bias would be solely against people who partake of marijuana, wouldn't it be, though, Mr. Taylor?

"A. Yes, I think so.

"Q. *And even though the Judge would give you certain rules of law to apply to certain factual situations that will be presented to all of you people, you still would find yourself in a situation where you would intrinsically favor the non-drug users, wouldn't you?*

"A. *Yes, I would.*

"Q. *You don't think that would interfere with your ability to apply the law as given to you in this case?*

"A. *It might.*

"Q. It might. Do you think it would interfere with your ability to be fair and impartial?

"A. It might.

"MR. RAYMOND: Might. Your Honor, I will join the trio and challenge the juror for cause. Also, I think, it is abundantly clear the witness is biased and he hasn't heard the evidence, hasn't heard the law, and yet he is saying that he will generally find in favor of narcotics officers if their testimony conflicts with the defendant or the defendants, that bias may interfere with his ability to apply the law, as you will instruct them at a later stage, and I honestly believe his bias has been shown, and would join everybody else in asking he be disqualified for cause.

"THE COURT: I will deny the motion." (Emphasis added.)

In summary, the potential juror testified that he held strong beliefs about marijuana and the leniency of our legal system—that he would "intrinsically favor" those who did not use drugs.

*Prejudicial or Harmless Error Burden of Proving Prejudicial Error*

This court has said, where the jury-panel array was questioned, that

"[i]n order to establish reversible error, the defendant must show where he was prejudiced by the irregularity." *Parks v. State*, Wyo., 600 P.2d 1053, 1055 (1979), and where the same question was at hand, we said, in *Petersen v. State*, Wyo., 594 P.2d 978, 983 (1979):

" * * * Errors and irregularities in making up a jury panel which can in no way prejudice the parties do not invalidate a jury array." Citing *State v. Goyet*, 119 Vt. 167, 122 A.2d 862, 867 (1956).

In coming to this conclusion, we relied, in *Petersen v. State*, supra, upon *People v. Boston*, 309 Ill. 77, 139 N.E. 880, 882 (1923), where the Supreme Court of Illinois said:

" * * * Mere irregularities in failing to comply strictly with the provisions of the statute which are not prejudicial to the parties do not invalidate the list, but a substantial compliance with the law is necessary, and a disregard of the material provisions which make up the essential features of the system and are designed to secure and preserve a fair and impartial trial is not a mere irregularity and is ground for challenging the array. Where no attempt has been made to select a jury in accordance with the requirements of the statute, as the record shows to be the fact in this case, the challenge to the array must be sustained."

It is therefore conceded that, before the judge's discretion in ruling on the structuring of a fair and impartial jury can be said to have been abused, it must be shown that the complainant suffered prejudice by the court's adverse ruling or other alleged error.

### Resolution of the Ultimate Question In This Appeal

The ultimate question for our resolve in this appeal is this:

Since it is the burden of the defendants-appellants here to demonstrate statutorily defined bias and prejudice, has that burden been discharged and if it has, was the court's ruling reversibly prejudi-

cial in the constitutional, fair-trial sense of the word?

First off, the record shows beyond controversy that counsel for both defendants twice obtained an admission from the questionable venireman that he did not think he could be fair and impartial. He also admitted, under questioning by the court, that his feelings about marijuana might "have something to do with the way I think, make decisions." The defendants therefore met their burden of raising the presumption of partiality. This juror was obviously "biased or prejudiced * * * against the accused" within the meaning of § 7–11–105(a)(ii), supra, and the court's refusal to excuse for cause was error. The next decision to be made is whether or not the district court's ruling constituted, under the facts of this case, such error as is so prejudicial as to establish grounds for reversal as a matter of law.

The Supreme Court of the United States has held that the grant or denial of a challenge for cause is at the discretion of the trial court and abuse will not be found unless the error is so manifest as to remove it from the realm of the court's discretion. The Court has said:

" * * * It must be made clearly to appear that upon the evidence the court ought to have found the juror had formed such an opinion that he could not in law be deemed impartial. The case must be one in which it is manifest the law left nothing to the 'conscience or discretion' of the court." *Reynolds v. United States*, 98 U.S. (8 Otto) 145, 156, 25 L.Ed. 244 (1878).

Also see *Spies v. Illinois*, 123 U.S. 131, 179, 8 S.Ct. 21, 30, 31 L.Ed. 80 (1887). In the case at bar, I not only find that the prejudice of the challenged juror was in the nature of such "prejudice" and "bias" as is identified in § 7–11–105(a)(ii), supra, but I also come comfortably to the conclusion that the ruling of the district court constituted manifest prejudicial error and, therefore, the proclamations of the venireman in question here left nothing to the " 'con-

science or discretion of the court.' " *Reynolds v. United States,* supra.

I reach this conclusion because the appellants were forced to use a peremptory challenge to remove the juror.[8] As a result, the appellants had exhausted their peremptory challenges before the jury was seated. Patterson's attorney informed the court of the defendant's dissatisfaction with the jury and objected to the forced use of a peremptory challenge upon the venireman. At that time he indicated that he would have challenged the final juror called had he been able to do so. Spoon's counsel joined in Patterson's objection.

I grant that case law diverges on the issue of whether or not an erroneous ruling on a challenge for cause is prejudicial error. Many jurisdictions hold that where the challenging party has used a peremptory challenge to remove the potential juror, the error committed by the trial court in overruling a challenge for cause is waived. *State v. Hooper,* 140 Kan. 481, 37 P.2d 52 (1934).[9] Some authorities hold that where the offensive venireperson is struck by the challenging party and therefore did not actually sit on the jury, there is no error, unless that party was forced to exhaust his peremptory challenges in striking the juror. E.g. *Foster v. State,* 240 Ga. 858, 242 S.E.2d 600, 602 (1978). Other authorities hold that an erroneous ruling on a challenge for cause is reversible "where the accused has been compelled subsequently to exhaust all his peremptory challenges before the final selection of the jury." *State v. Stentz,* 30 Wash. 134, 70 P. 241, 245 (1902). Also see *Wolfe v. State,* 147 Tex.Crim.R. 62, 178 S.W.2d 274 (1944). I think the last-mentioned rule tends toward the fairest result.

As I have previously noted, a peremptory challenge is utilized when there are no grounds upon which to challenge a juror for cause, but the challenging party feels—for any reason—that fairness to his or her client will best be served by striking the juror. The United States Supreme Court said in *Swain v. State of Alabama,* 380 U.S. 202, 220–221, 85 S.Ct. 824, 836, 13 L.Ed.2d 759 (1965):

> "The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. *State v. Thompson,* 68 Ariz. 386, 206 P.2d 1037 (1949); *Lewis v. United States,* 146 U.S. 370, 378, 13 S.Ct. 136, 139, 36 L.Ed. 1011. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. *Hayes v. State of Missouri,* 120 U.S. 68, 70, 7 S.Ct. 350, 351, 30 L.Ed. 578. It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' *Lewis,* supra, 146 U.S., at 376, 13 S.Ct., at 138, upon a juror's 'habits and associations,' *Hayes v. State of Missouri,* supra, 120 U.S., at 70, 7 S.Ct., at 351, or upon the feeling that 'the bare questioning [a juror's] indifference may sometimes provoke a resentment,' *Lewis,* supra, 146 U.S., at 376, 13 S.Ct. at 138. It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a *prosecutor or defense counsel must de-*

---

**8.** Appellants were each given eight peremptory challenges, and the State was given 16 pursuant to Rule 25(b), W.R.Cr.P., which provides:

"(b) *Peremptory challenges.*—In every case, including the selection of alternate jurors, the state shall be entitled to the aggregate number of peremptory challenges to which the defendant or defendants are entitled. If the offense charged is punishable by death, each defendant shall be entitled to 12 peremptory challenges. If the offense charged is punishable by imprisonment for more than one (1) year, each defendant shall be entitled to 8 peremptory challenges. If the offense charged is a misdemeanor, each defendant shall be entitled to 4 peremptory challenges."

**9.** See 47 Am.Jur.2d, Jury § 218.

cide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the voir dire, by both prosecutor and accused, *Miles v. United States*, 103 U.S. [(13 Otto)] 304, 26 L.Ed. 481; *Aldridge v. United States*, 283 U.S. 308, 51 S.Ct. 470, 75 L.Ed. 1054. This Court has held that the fairness of trial by jury requires no less. *Aldridge,* supra. Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried."

Any time a challenge for cause is erroneously denied, thereby imposing a forced use of a peremptory challenge, the challenging party is effectively denied one peremptory challenge to which he is entitled. Rule 25(b), supra n. 8. The use of the peremptory challenge to remove the juror does not obviate the court's original mistake.

If the rule espoused in *Foster v. State,* supra, were to be applied, the error in this case would not be reversible because the appellants did not use their last peremptory challenge on the prejudiced juror. I do not perceive a meaningful difference between using the last peremptory challenge to remove a juror who should have been excused for cause and using the first peremptory challenge to remove such a juror. The effect is the same—the challenging party has one less peremptory challenge to use on any subsequent juror whom he or she may find objectionable but who may not be challengeable for cause. A peremptory challenge cannot be arbitrarily denied or questioned. 47 Am.Jur.2d, Jury § 235. Neither should it be denied because of an error made by the court. I wholeheartedly agree with the position taken by the Court of Criminal Appeals of Texas:

> "'... in the trial of a criminal case where an accused has been wrongfully deprived of a peremptory challenge by being forced to use such upon a juror who was shown to be subject to a challenge for cause, and such accused has exhausted his peremptory challenges, and a further juror be presented whom he states to be objectionable to him, then it will not be necessary for accused to show in what manner such further juror was objectionable to him, nor to show that such juror was an unfair or partial juror. In further words, we think the accused should only be required to exercise a peremptory challenge on the objectionable juror and not a challenge for cause, nor show grounds for a challenge for cause, nor to show why such juror was objectionable to him.'" *Moreno v. State,* Tex.Cr.App., 587 S.W.2d 405, 407–408 (1979), quoting *Wolfe v. State,* supra, 178 S.W.2d at 281.

Even though Spoon and Patterson did not use their final peremptory challenge on the juror who evidenced deep partiality, they were indeed prejudiced because they could not challenge the twelfth juror seated whom they found—for whatever reason—to be unacceptable. It appears from the record that defense counsel must have believed that cause could not be established for purposes of excusing this twelfth juror, and they were left with no peremptory challenges. More importantly, appellants here were prejudiced because they were in effect given one less peremptory challenge than was the State.

Attorneys for the State express the concern that a finding that Spoon and Patterson were prejudiced by the district court's error will result in "a per se rule of reversal whenever a trial judge errs on a cause decision." My position would not lead to this result. My assessment of the issue would hold that it is only when the challenging party has *exhausted his or her peremptory challenges* before the jury is seated that an erroneous ruling on a challenge for cause will qualify for reversal. If the appellant passes the jury for cause before using all of his peremptory challenges, he cannot, upon appeal, be heard to complain about its composition. Even

where the trial court did unquestionably err, the appellant still must establish that the ruling was prejudicial. *Parks v. State,* supra. This he cannot do if he does not exercise his peremptory challenges.

In authoring this opinion, my primary concern is not only to help ensure the constitutional right of the accused in this case to a trial before an impartial jury, but to help ensure a fair and impartial jury for all litigants who have a right to and do demand a jury trial. As was so aptly noted by the Supreme Court of Washington in *State v. Parnell,* 77 Wash.2d 503, 463 P.2d 134, 137 (1969):

> " * * * [B]ut more important than speedy justice is the recognition that every defendant is entitled to a fair trial before 12 unprejudiced and unbiased jurors. Not only should there be a fair trial, but there should be no lingering doubt about it."

The error of the district court was manifest and prejudicial. I, too, would reverse and remand, but for the reasons stated in *this* opinion rather than those offered by the Chief Justice.

BROWN, Justice, specially concurring.

I agree that this case must be reversed; however, I have an appreciation of the problem that faced the trial judge. Venireman Taylor simply wanted to get off the jury. The information he volunteered and his answers to the questions on voir dire were calculated to get him excused. Apparently Mr. Taylor saw how other people had avoided jury duty, or had been told how to answer voir dire questions in order to be excused. The trial judge knew what Taylor was trying to do. He was fearful that if he excused Taylor an epidemic might break out, and others on the panel would be afflicted with prejudice and bias. There are better ways to deal with a prospective juror who obviously is trying to shirk a civic duty.